Julianne P. Blanch, USB #6495
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
JBlanch@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendant DEMI ENGEMANN*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARCIANO BRUNETTE,<br><br>Plaintiff,<br><br>vs.<br><br>DEMI ENGEMANN and JEFF JENKINS PRODUCTIONS LLC,<br><br>Defendant. | **DEFENDANT DEMI ENGEMANN'S MOTION TO DISMISS PURSUANT TO UTAH'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT OR, ALTERNATIVELY, FED. R. CIV. P. 12(b)(6)**<br><br>Case No. 2:25-cv-01102-DAO<br><br>Magistrate Judge Daphne A. Oberg |

4901-1866-5872.v1

## TABLE OF CONTENTS

RELIEF SOUGHT AND GROUNDS FOR RELIEF ....................................................... 1

INTRODUCTION ............................................................................................................. 2

RELEVANT FACTUAL BACKGROUND ....................................................................... 3

DISCUSSION .................................................................................................................... 4

    I.    The Complaint should be dismissed under the Anti-SLAPP Act ....................................... 4

        A.  The Anti-SLAPP Act ........................................................................................ 4

        B.  The Anti-SLAPP Act applies to Brunette's claims against Engemann ........................... 5

            1.    Brunette's claims are based on alleged statements by Engemann ............................. 5

            2.    As pleaded, the alleged statements were made on a matter of public concern ........... 6

        C.  Each cause of action against Engemann fails ................................................... 8

            1.    Brunette released the very claims he now brings ....................................... 8

            2.    Brunette must prove actual malice for all his causes of action to survive ............... 10

            3.    The alleged statements by Engemann regarding her opinions on sexual assault are not actionable .................................................................. 13

            4.    By Brunette's own allegations, he invited and induced the alleged statements, barring any claim based upon them .......................................... 15

            5.    The alleged facts for Count Five are not actionable ................................... 16

    II.    Alternatively, each cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) ............................................................................................ 18

        A.  Standard for dismissal under Fed. R. Civ. P. 12(b)(6) .................................. 18

        B.  Brunette cannot state a claim based on subjective opinions ......................... 19

        C.  Brunette's invitation and inducement of the alleged statements warrants dismissal of all causes of action .............................................................. 19

        D.  The Complaint fails to sufficiently plead the elements for Count Five ......... 19

CONCLUSION ................................................................................................................ 19

4901-1866-5872.v1

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................ 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................ 18

*Caranchini v. Peck*,
355 F. Supp. 3d 1052 (D. Kan. 2018)............................................................................... 5

*Conlay v. Baylor Coll. of Med.*,
688 F. Supp. 2d 586 (S.D. Tex. 2010) ...................................................................... 15, 16

*Cox v. Nasche*,
70 F.3d 1030 (9th Cir. 1995) .................................................................................... 15, 16

*Gallagher v. Shelton*,
587 F.3d 1063 (10th Cir. 2009) ...................................................................................... 18

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) .................................................................................................. 10, 12

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993) ............................................................................................ 15

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*,
655 F.3d 136 (2d Cir. 2011) ........................................................................................... 10

*Lichfield v. Kubler*,
No. 2:24-cv-00458-JNP-CMR, 2025 LX 469863 (D. Utah Sep. 29, 2025) ...................... 5

*Moore v. Cohen*,
548 F. Supp. 3d 330 (S.D.N.Y. 2021) ............................................................................ 10

*Moreau v. United States Olympic & Paralympic Comm.*,
641 F. Supp. 3d 1122 (D. Colo. 2022)............................................................................. 5

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ....................................................................................................... 10

*SCO Grp., Inc. v. IBM*,
879 F.3d 1062 (10th Cir. 2018) ...................................................................................... 17

*Sleepys LLC v. Select Comfort Wholesale Corp.*,
779 F.3d 191 (2d Cir. 2015) ..................................................................................... 15, 16

*Snyder v. Phelps*,
   562 U.S. 443 (2011).................................................................................................. 6

*UHS of Provo Canyon, Inc. v. Bliss*,
   No. 2:24-CV-163-DAK-CMR, 2024 U.S. Dist. LEXIS 173244 (D. Utah Sep. 24, 2024)......... 5

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
   450 F.3d 1132 (10th Cir. 2006) ................................................................... 10, 11, 12

**State Cases**

*C.R. Eng. V. Swift Transp. Co.*,
   2019 UT 8 (2019) ................................................................................................. 18

*Cox v. Hatch*,
   761 P.2d 556 (Utah Sup. Ct. 1988)........................................................................ 12

*Davidson v. Baird*,
   2019 UT App 8 (2019) ..................................................................................... 11, 12

*Dillon v. S. Mgmt. Corp.*,
   2014 UT 14 (2014) ............................................................................................... 12

*MacKey v. Krause*,
   2025 UT 37 (2025) ....................................................................................... passim

*Overstock.com, Inc. v. SmartBargains, Inc.*,
   2008 UT 55 (2008) ............................................................................................... 17

*Royer v. Steinberg*,
   90 Cal. App. 3d 490 (1979) .................................................................................. 15

*Searle v. Johnson*,
   646 P.2d 682 (Utah Sup. Ct. 1982)........................................................................ 17

*West v. Thomson Newspapers*,
   872 P.2d 999 (Utah Sup. Ct. 1994)........................................................................ 13

**Statutes & Codes**

Utah Code § 78B-25-102(2)(c)........................................................................... 1, 4, 18

Utah Code § 78B-25-103 ........................................................................................ 4, 13

Utah Code § 78B-25-106 ............................................................................................... 4

Utah Code § 78B-25-107(1) .......................................................................................... 5

Utah Code § 78B-25-107(1)(a)...................................................................................... 4

Utah Code § 78B-25-107(1)(c)...................................................................................... 4

Utah Code § 78B-25-107(1)(c)(i) ......................................................................... 1, 8, 16

Utah Code § 78B-25-107(1)(c)(ii) ................................................................ 1, 15, 16, 18

Utah Code § 78B-25-107(1)(c)(ii)(a).................................................................. 8

Utah Code § 78B-25-110 ..................................................................... 1, 5

Utah Code § 78B-25-111 ......................................................................... 4

**Rules & Orders**

Fed. R. Civ. P. 12(b)(6)................................................................. 1, 3, 18, 19

**Treatises & Publications**

Grebenyuk, *Who Is Vanderpump Villa's Marciano Brunette? What to Know After His Affair With Mormon Wives' Jessi Ngatikaura*, US WEEKLY, https://www.usmagazine.com/entertainment/news/vanderpump-villas-marciano-brunette-what-to-know-amid-mormon-wives-affair (Nov. 13, 2025)......................................................... 2

Restatement (Second) of Torts § 583 (Am. Law Inst. 1977)........................................ 15

William L. Prosser, TORTS, 784 (4th ed. 1971) .............................................. 15

Zacharek, *et al.*, *The Silence Breakers*, TIME MAGAZINE, https://time.com/time-person-of-the-year-2017-silence-breakers (Dec. 6, 2017)................................................... 8

4901-1866-5872.v1

## RELIEF SOUGHT AND GROUNDS FOR RELIEF

Defendant Demi Engemann ("Engemann") hereby moves to dismiss the Complaint of plaintiff Marciano Brunette ("Brunette") with prejudice pursuant to Utah's Uniform Public Expression Protection Act, Utah Code sections 78B-25-101, *et seq.* (the "Anti-SLAPP Act" or "Act"), and seeks an award of attorneys' fees and costs under the same Act. Alternatively, Engemann moves to dismiss with prejudice each cause of action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

All claims brought in the Complaint against Engemann arise from her "exercise of [her] right of freedom of speech . . . guaranteed by the United States Constitution or Utah Constitution, on a matter of public concern." Utah Code § 78B-25-102(2)(c). Specifically, Brunette has sued Engemann for allegedly making statements concerning sexual misconduct. These are matters of public concern because Engemann is a public figure, the alleged statements occurred in connection to the public broadcast of two television shows, and such statements involve matters of public interest. Therefore, the Anti-SLAPP Act applies here.

Brunette's causes of action against Engemann must be dismissed with prejudice because he cannot establish a *prima facie* case as to each essential element of the cause of action. *See* Utah Code § 78B-25-107(1)(c)(i). Alternatively, for each cause of action, Brunette has failed to state a cause of action upon which relief can be granted or there is no genuine issue as to any material fact and Engemann is entitled to judgment as a matter of law on each cause of action or part of each cause of action. *See* Utah Code § 78B-25-107(1)(c)(ii).

If Engemann prevails on this Motion, the Court must "award court costs, reasonable attorney fees, and reasonable litigation expenses related to the motion" to her. *See* Utah Code § 78B-25-110.

Engemann also seeks alternative relief pursuant to Fed. R. Civ. P. 12(b)(6) because each cause of action against her fails to state a claim on which relief can be granted. Additionally, amendment will not save the pleading defects with each cause of action. Accordingly, Engemann requests that each cause of action be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**<u>INTRODUCTION</u>**

This case presents a lesson in hypocrisy. The plaintiff, Brunette, has filed suit claiming that his "reputation" was irreparably damaged when a female co-worker (Engemann) publicly reported his unwelcomed sexual advances toward her. However, Brunette has gone to great lengths to tell the world about his sexual prowess, even bragging to a national television audience that a former employer had to implement a special policy to keep him from preying on female co-workers. Here are Brunette's own words:

> *I am a bad dog at times. Growing up in Las Vegas, I worked at all the best nightclubs. I was easily able to translate that to the restaurant business. But, at my job, they had to make a policy that you cannot sleep with any employees, **because I slept with an extraordinary amount of employees**.*[1]

This is telling. Because Brunette was incapable of exercising self-restraint, his employer had to take extraordinary measures (i.e., implementing a company policy) to protect female employees from Brunette.

Contrast this with the make-believe descriptions of Brunette as a model of purity that appear throughout his lawsuit: "Before Defendants' publications described in this Complaint, [Brunette] maintained a positive public image and ***did not have a reputation for sexual misconduct or predatory behavior***." Complaint, ¶ 27 (emphasis added). Clearly, that is not true. Brunette had a reputation for sexual misconduct and was proud of it. If this was not the case, there would have been no reason for his employer to implement a special policy prohibiting him from sleeping with other employees. And it was not just one or two. According to Brunette, he had slept with an "extraordinary" number of employees.

In the end, as detailed below, this lawsuit is a sham and was brought solely to gain media attention. Brunette is desperate to be famous and is using this lawsuit to try to make-up for his

---

[1] Declaration of Juli Blanch ("Blanch Decl."), ¶ 9 (emphasis added) (Blanch Decl. filed concurrently with this Motion); *see also* Grebenyuk, *Who Is Vanderpump Villa's Marciano Brunette? What to Know After His Affair With Mormon Wives' Jessi Ngatikaura*, US WEEKLY, https://www.usmagazine.com/entertainment/news/vanderpump-villas-marciano-brunette-what-to-know-amid-mormon-wives-affair (Nov. 13, 2025).

4901-1866-5872.v1                                    2

failure-to-launch TV career, lack of event invitations, weak social media following and obsession with "getting even" with Engemann. Through the suit, Brunette wants to punish Engemann for exercising her First Amendment right to speak out concerning Brunette's misconduct and opining on sensitive topics involving sexual assault (and likely to deter other women from coming forward). Engemann's conduct is protected by Utah's Anti-SLAPP Act and all claims against her should be dismissed with prejudice pursuant to the Act. Alternatively, all claims are insufficiently pleaded and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## RELEVANT FACTUAL BACKGROUND

This is a defamation-based lawsuit brought by Brunette against Engemann and defendant Jeff Jenkins Productions LLC ("Jeff Jenkins"). Engemann appears in the reality television show titled *The Secret Lives of Mormon Wives*, which streams on Disney's Hulu platform. Complaint, ¶¶ 18, 21. Brunette alleges that he and Engemann appeared together in a different reality television show, *Vanderpump Villa*. *Id.* at ¶ 22–23.

The Complaint alleges that, in April 2025, Hulu hosted an event with cast members of both *The Secret Lives of Mormon Wives* and *Vanderpump Villa*. *Id.* at ¶ 57. Brunette claims that he was invited to the event and then subsequently uninvited. *Id.* Brunette believes he was uninvited "because of Engemann." *Id.* Based on this belief, Brunette posted a video on the social media platform TikTok where he said: "uninvited to the function cus a 30yo mormon wife's scared I'll tell her husband the truth." *Id.* at ¶ 58. As alleged, the "30yo mormon wife" was Engemann, who Brunette believes was the reason he was uninvited to the event. *Id.*

Brunette then alleges that, on the same day after his TikTok video was posted, and "in response to [Brunette's] post," Engemann "commented about the video on social media" with the opinion that Brunette was a "s3ual pr3dator that can't keep his hands to himself." *Id.* at ¶ 59. Brunette alleges that Engemann made other comments concerning her interactions with Brunette, which in Engemann's opinion involved Brunette touching her sexually without her consent. *See e.g., id.* at ¶¶ 63, 69, 85, 91, 96, 97, 118, 122. Brunette also alleges that Engemann made comments about what she believed sexual assault entailed and how victims may respond to sexual assault. *See id.* at ¶¶ 63, 93, 98, 117 (comment by publicist attributed to Engemann).

Brunette alleges that he is a public figure and that the alleged statements by Engemann impacted his reputation and public perception of him. *Id.* at ¶¶ 24–28, 123–132. Brunette brings the following claims against Engemann arising from the alleged statements: (1) defamation, (2) defamation per se, (3) defamation by implication, (4) false light, (5) tortious interference with economic relations, and (6) business disparagement.

In a video posted on his Instagram profile, Brunette states that this lawsuit is about "getting even" with Engemann. Blanch Decl., ¶ 2, Exh. 1.

**DISCUSSION**

## I.   The Complaint should be dismissed under the Anti-SLAPP Act

### A.   The Anti-SLAPP Act

In 2023, the Utah Legislature enacted the Anti-SLAPP Act, which, like the anti-SLAPP laws of other states, is "designed to allow 'early adjudication of baseless claims aimed at preventing an individual from exercising the constitutional right of free speech.'" *MacKey v. Krause*, 2025 UT 37, ¶ 35 (2025). The Anti-SLAPP Act mandates that it "shall be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution or the Utah Constitution." Utah Code § 78B-25-111.

Under the Anti-SLAPP Act, a defendant may "file a special motion for expedited relief to dismiss" a cause of action or part of a cause of action based on, *inter alia*, the defendant's "exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Utah Constitution, on a matter of public concern." Utah Code §§ 78B-25-102(2)(c), 78B-25-103. In ruling on an anti-SLAPP motion under the Act, "the court shall consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment under Utah Rules of Civil Procedure, Rule 56." Utah Code § 78B-25-106.

In considering an anti-SLAPP motion, the court first looks to whether the Anti-SLAPP Act applies to the challenged causes of action. Utah Code § 78B-25-107(1)(a). If the Act does apply, then the court analyzes the legal sufficiency of the claims. Utah Code § 78B-25-107(1)(c). As

4

explained by the Utah Supreme Court, the Anti-SLAPP Act "establishes a three-step process to evaluate a special motion for expedited relief." *MacKey*, 2025 UT at ¶ 38. "The first step requires the court to determine whether [the Act] applies to all or part of the challenged causes of action." *Id.*; *see also* Utah Code § 78B-25-107(1). "The second step places the burden on the plaintiff to demonstrate that there is a prima facie case for each element of the claims under review." *Id.* Finally, "[t]he third step permits the defendant to either show that the plaintiff cannot state a cause of action or that there is no genuine issue of material fact that would prevent entry of judgment for the defendant." *Id.*

If the moving party prevails on the anti-SLAPP motion, they are entitled to an award of fees and costs: "the court shall award court costs, reasonable attorney fees, and reasonable litigation expenses related to the motion . . . [¶] to the moving party if the moving party prevails on the motion." Utah Code § 78B-25-110.

The Anti-SLAPP Act applies not only to claims brought in Utah state court, but also to claims brought in federal courts. Courts in this District have applied the Anti-SLAPP Act to dismiss claims brought by plaintiffs that arise from protected activity. *See Lichfield v. Kubler*, No. 2:24-cv-00458-JNP-CMR, 2025 LX 469863, *31 (D. Utah Sep. 29, 2025); *UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-CV-163-DAK-CMR, 2024 U.S. Dist. LEXIS 173244, *62 (D. Utah Sep. 24, 2024). Other district courts in this Circuit have similarly applied the anti-SLAPP laws of their forum state. *See Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1131–33 (D. Colo. 2022); *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1061 (D. Kan. 2018).

**B.      The Anti-SLAPP Act applies to Brunette's claims against Engemann**

Each of Brunette's claims against Engemann arises from the alleged exercise of Engemann's constitutional right of free of speech on a matter of public concern. "By its plain language, [the Anti-SLAPP Act] applies to . . . any statement made anywhere on a matter of public concern." *MacKey*, 2025 UT at ¶ 42.

**1.      Brunette's claims are based on alleged statements by Engemann**

Here, there can be no reasonable dispute that each of Brunette's claims against Engemann arises from alleged written and oral statements made by her. Counts One through Three are all

4901-1866-5872.v1                                         5

defamation-based claims and concern alleged statements made by Engemann in social media posts (Complaint, ¶¶ 59, 62–63, 118, 120, 121), on a podcast (*id.* at ¶¶ 69–71), in publicly broadcast episodes of a television show (*id.* at ¶¶ 85, 90–93, 95–100), and in an interview (*id.* at ¶ 122), as well as an alleged public statement made by Engemann's publicist that Brunette attributes to Engemann (*id.* at ¶ 117). Counts One through Three expressly concern alleged "statements" made by Engemann regarding Brunette's conduct, which Brunette characterizes as defamatory. *See id.* at ¶¶ 135–157. Count Four for false light concerns the same alleged statements, characterized as Engemann giving "excessive publicity to a matter concerning Plaintiff that placed Plaintiff before the public in a false light." *Id.* at ¶ 159. Count Five for tortious interference with economic relations asserts that the alleged statements by Engemann "interfered with Plaintiff's existing and potential business relationships." *Id.* at ¶ 164. And Count Six for business disparagement contends that "Engemann's statements," as alleged in the Complaint, negatively impacted Brunette's "brand" in the public eye. *Id.* at ¶ 170. Because the Anti-SLAPP statute applies to "*any statement made anywhere* on a matter of public concern," these alleged statements, which all form the basis for each claim against Engemann, fall under the purview of the statute if they were made on a matter of public concern. *See MacKey*, 2025 UT at ¶ 42 (emphasis added).

2.    **As pleaded, the alleged statements were made on a matter of public concern**

As to whether the alleged statements by Engemann were made on a matter of public concern, the Complaint admits as much by asserting that Brunette is a public figure, that the alleged statements concern his sexual misconduct on the set of a "hit reality television show," that the speaker of the alleged statements (Engemann) is also a public figure, and that some of the statements were made in the context of a different widely viewed television show. Complaint, ¶¶ 8–9, 24–25, 59–74, 85–100, 117–122.

In the First Amendment context, the Supreme Court has explained that "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, [citation], or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal quotation marks omitted). The Utah Supreme Court

adopted this definition of "public concern" for analyzing claims under the Anti-SLAPP Act. *MacKey*, 2025 UT at ¶ 49. In *MacKey* a concerned parent's statements about a teacher's alleged physical and verbal abuse of students were found to involve a matter of public concern. *MacKey*, 2025 UT at ¶ 51.

Here, the Complaint makes clear that, as alleged, this case involves a matter of public concern. Specifically, alleged statements by one public figure (Engemann) about another public figure (Brunette) regarding his sexual misconduct on the set of a popular television show involve a matter of public concern. Brunette claims he is a "a public-facing individual who has appeared in television and streamed reality programming and related media" (*id.* at ¶ 24), he relies on his "reputation" and "public perception" of himself for his professional opportunities (*id.* at ¶ 25), and that he starred in the "hit reality television show *Vanderpump Villa*" (*id.* at ¶¶ 8). The Complaint also alleges that Engemann herself is also a public figure who "stars in the hit reality television show *The Secret Lives of Mormon Wives*." *Id.* at ¶ 9.

The alleged public statements concern, in part, Brunette and his conduct towards Engemann that occurred on the set of the "hit reality television show *Vanderpump Villa*." *Id.* at ¶¶ 8, 57–74, 85–100, 117–122. The alleged statements either directly concern Engemann's opinion that Brunette's touched her without consent or concern Engemann's opinion on what constitutes sexual misconduct, as well as how victims of sexual assault may react to the assault. *Id*. The alleged statements are also asserted to be widely disseminated through different types of media, including public social media posts, a podcast, a television show, and a public interview. *Id.* All of this shows that, as framed by the Complaint, the statements involve matters of public concern.

The Complaint further demonstrates the public nature of this controversy by how it frames the purported harm complained of. Brunette asserts that the alleged statements by Engemann were "published broadly" and that his reputation and business interests were harmed *because* the alleged statements received such widespread attention. *Id.* at ¶¶ 6, 24–28, 123–132. Meaning, the alleged harm occurred because the statements involved a matter of public concern.

Furthermore, the alleged statements attributed to Engemann concern not only herself, but also other victims of Brunette and the overall topic of sexual misconduct in the entertainment

industry. *See id.* ¶¶ 62 (Alleged comment by Engemann about "how many other women [may] come forward" about being victims of Brunette), 63 (Alleged opinion by Engemann about the definition of sexual assault in general), 88 & 90 (Alleging that Engemann discussed Brunette's sexual misconduct in the context of similar misconduct other women experienced), 98 (Alleging that Engemann discussed her opinion on how sexual assault victims respond to the assault), 117 (Alleged statement by Engemann's publicist attributed to her that discusses the definition of sexual assault). Such topics are of concern to members of the public and are subject of legitimate news interest. *See MacKey*, 2025 UT at ¶ 49. Sexual misconduct by public figures has obviously captured public attention in the past, such as, for example, the MeToo Movement, which arose from sexual misconduct in the entertainment industry, becoming a national movement in 2017 and beyond.[2]

Because Brunette's claims all arise from alleged statements of Engemann on a matter of public concern, the Anti-SLAPP Act applies to each claim. *See MacKey*, 2025 UT at ¶ 42.

**C.    Each cause of action against Engemann fails**

Because the Anti-SLAPP Act applies to each of Brunette's claims against Engemann, Brunette bears the burden of establishing a *prima facie* case as to each essential element of his claims. *See MacKey*, 2025 UT at ¶ 58. To do so, Brunette must provide "some competent evidence on every element needed to make out [a] cause of action." *Id.* (Internal quotation marks omitted). If Brunette fails to meet his burden, his claims must be dismissed. *See* Utah Code § 78B-25-107(1)(c)(i). Additionally, if Brunette's Complaint fails to state a cause of action upon which relief can be granted as to any claim, that claim must be dismissed. *See* Utah Code § 78B-25-107(1)(c)(ii)(a).

**1.    Brunette released the very claims he now brings**

In connection with Brunette's appearance on *The Secret Lives of Mormon Wives*, Brunette agreed to a broad release in a February 27, 2025, Performer Agreement, barring the very claims

---

[2] TIME Magazine named the "Silence Breakers" its "Person of the Year" for 2017. These were women who spoke up about sexual misconduct in the entertainment industry, among others, as part of the MeToo Movement. *See* Zacharek, *et al.*, *The Silence Breakers*, TIME MAGAZINE, https://time.com/time-person-of-the-year-2017-silence-breakers (Dec. 6, 2017).

he brings against Engemann in this lawsuit. In that agreement, Brunette acknowledged the following:

> Artist [i.e., Brunette] may reveal and/or relate, and other parties (including, without limitation, other participants, Artist's friends, Artist's family, Artist's co-workers, Producer, and/or Hulu), may reveal and/or relate information about Artist of a personal, private, surprising, embarrassing and/or unfavorable nature. Artist further understands that Artist's appearance, depiction and/or portrayal in the Series, and Artist's actions and the actions of others displayed in the Series, may be embarrassing or of an otherwise unfavorable nature and may expose Artist, Artist's friends, co-workers and/or family to public ridicule, humiliation, or condemnation. Artist acknowledges that Artist is voluntarily participating in the Series and related activities with full knowledge, appreciation and understanding of the personal risks involved, and hereby agrees to accept any and all risks of participating in the Series.

Blanch Decl., ¶ 8, Exh. 7 (Exhibit A of Producer Agreement at § 7(a)). Critically, the Performer Agreement contains a broad release, which states, in relevant part:

> TO THE MAXIMUM EXTENT PERMITTED BY LAW . . . ARTIST HEREBY IRREVOCABLY AND UNCONDITIONALLY RELEASES AND FOREVER DISCHARGES EACH OF THE RELEASED PARTIES (AS DEFINED BELOW) FROM ANY AND ALL CLAIMS, ACTIONS, COMPLAINTS, DAMAGES, DEMANDS, ALLEGATIONS, SUITS, LIABILITIES, LOSSES, LIENS, COSTS, EXPENSES, INJURIES AND CAUSES OF ACTION, OF ANY KIND WHATSOEVER (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) INCLUDING WITHOUT LIMITATION THOSE DIRECTLY OR INDIRECTLY CAUSED BY, ARISING OUT OF, RESULTING FROM, OR RELATING TO, IN ANY WAY, THE SERIES (INCLUDING, WITHOUT LIMITATION, ARTIST'S PARTICIPATION THEREIN AND THE DEVELOPMENT, PRODUCTION, DISTRIBUTION OR EXPLOITATION THEREOF), ARTIST'S SERVICES, THE ACTIVITIES AND LOCATIONS, THE RESULTS AND PROCEEDS, THE FOOTAGE SHOT IN CONNECTION WITH THE SERIES (INCLUDING, BUT NOT LIMITED TO, ANY RECORDINGS USING HIDDEN AND/OR CONCEALED CAMERAS, MICROPHONES OR OTHER DEVICES), OR THE EXERCISE OF ANY RIGHTS GRANTED HEREIN, ON ANY LEGAL OR EQUITABLE THEORY WHATSOEVER (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE, RIGHTS OF PRIVACY AND PUBLICITY, DEFAMATION, FALSE LIGHT, INFLICTION OF EMOTIONAL DISTRESS, COPYRIGHT AND OTHER INTELLECTUAL PROPERTY INFRINGEMENT, CLAIMS BASED UPON ANY ALLEGED PERSONAL INJURY, DEATH, AND/OR PROPERTY DAMAGE) (COLLECTIVELY, THE "RELEASED CLAIMS"). TO THE MAXIMUM EXTENT PERMITTED BY LAW, ARTIST SHALL NOT SUE, INSTITUTE ANY OTHER PROCEEDINGS, OR MAKE ANY CLAIM AGAINST ANY OF THE RELEASED PARTIES OR ANYONE ELSE FOR ANY CAUSE OF ACTION BASED ON ANY OF THE RELEASED CLAIMS.

4901-1866-5872.v1                                   9

*Id.* at § 8. The Performer Agreement also contains a choice of law provision, stating that it is governed by, construed, and enforced in accordance with the laws of New York. *Id.* at § 20.

Under New York law, "'a valid release constitutes a complete bar to an action on a claim which is the subject of the release.'" *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011); *see also Moore v. Cohen,* 548 F. Supp. 3d 330, 338–344 (S.D.N.Y. 2021) (Defamation claims and other claims barred by release).

Here, Brunette expressly acknowledged and assumed the risk that other participants in *The Secret Lives of Mormon Wives*, such as Engemann, "may reveal and/or relate information about [Brunette] of a personal, private, surprising, embarrassing and/or unfavorable nature." Blanch Decl., ¶ 8, Exh. 7 (Exhibit A of Producer Agreement at § 7(a)). Further, Brunette agreed to waive and release any claims "directly or indirectly caused by, arising out of, resulting from, or relating to, in any way," the television show, including claims for defamation. *Id.* at § 8. The parties released include, *inter alia*, "all participants, all other persons and entities rendering services in connection with" the show. *Id.* Therefore, Engemann—a star and indisputably a participant of the show rendering her services as a cast member—is a released party. *See id.*

The broad release in the Performer Agreement covers all claims against Engemann. All claims against her arise from her involvement in *The Secret Lives of Mormon Wives* and comments made by Engemann on the show or connected to the show. *See* Complaint, ¶¶ 63, 91, 93, 98, 100, 117, 122. Even Engemann's involvement with *Vanderpump Villa* is simply an extension of her involvement with *The Secret Lives of Mormon Wives*. *See id.* at ¶ 23. Because the release bars all claims against Engemann, Brunette's claims should be dismissed with prejudice.

**2.      Brunette must prove actual malice for all his causes of action to survive**

Because Brunette is a public figure, "he must demonstrate by a standard of clear and convincing evidence that the defamatory statement was made with 'actual malice.'" *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1136 (10th Cir. 2006). To protect free speech rights and guard against the chilling effect of litigation, the First Amendment requires that public figures prove a statement is made with "actual malice." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 (1974). This is

because "[t]he level of protection that a statement receives, under principles of free speech and expression, depends upon the identity of the plaintiff alleging defamation." *Davidson v. Baird*, 2019 UT App 8, ¶ 37 (2019). Indeed, "[i]n the realm of defamation law, not all persons are treated equally." *MacKey*, 2025 UT 37 at ¶ 70, n.8. Public officials and public figures "surrender a sizeable measure of their right to recover damages from those who defame them, in the form of facing a heavier burden to demonstrate that defamation occurred." *Davidson*, 2019 UT App at ¶ 37. This heavier burden mandates that the plaintiff prove by clear and convincing evidence that the defendant acted with actual malice. *Id.* Meaning, the plaintiff must prove that the alleged defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false or not. *Id.*; *see also World Wide Ass'n of Specialty Programs*, 450 F.3d at 1136.

"This rigorous standard also applies to a 'limited-purpose public figure.'" *World Wide Ass'n of Specialty Programs*, 450 F.3d at 1136. "In contrast to so-called 'all-purpose public figures,' who 'occupy positions of such persuasive power and influence that they may hold sway on any issue with which they choose to become involved,' [citation], a limited-purpose public figure is only a public figure with respect to a specific issue." *Id.* "[T]he Supreme Court has described a limited-purpose public figure as one who 'voluntarily injects himself . . . into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" *Id.*

Here, taking the Complaint at its word, Brunette is a public figure known to members of the public as a "star[]" of two seasons of a "hit reality television show." Complaint, ¶¶ 8, 24. In fact, for Brunette's claims to work as alleged, he must prove himself to be a public figure to establish that his reputation was damaged by the alleged statements. *See id.* at ¶¶ 24–28. According to Brunette, the alleged statements "are uniquely damaging" to public figures like himself because he relies on his reputation and public perception to generate business opportunities. *Id.* As alleged, it is only because Brunette is a public figure is he damaged by the alleged statements. *Id.* Thus, for his own allegations to work, he must prove malice.

Beyond the pleadings, the evidence shows that Brunette is an all-purpose public figure— or at the very least, a limited purpose public figure. Individuals are properly classified as public figures "by reason of the notoriety of their achievements or the vigor and success with which they

seek the public's attention." *Gertz*, 418 U.S. at 342. Here, Brunette used his role on *Vanderpump Villa* to achieve some amount of public notoriety. For example, People Magazine documented Brunette's rise to fame through a "cheating scandal" with a co-star (not Engemann) on *Vanderpump Villa*. Blanch Decl., ¶ 3, Exh. 2. Even this lawsuit has garnered press attention, with publications such as the Salt Lake Tribune, E! News, People Magazine, and USA Today, among others, publishing articles on the case. Blanch Decl., ¶¶ 4–7 Exhs. 3–6. Moreover, as admitted by Brunette, he started this public controversy involving his sexual misconduct by posting a public video on TikTok, implicitly calling out Engemann and implying a sexual or romantic encounter with her. Complaint, ¶ 58. He then further pushed the controversy into the public spotlight by posting a video on his Instagram profile of himself saying that this lawsuit is about "getting even," which was covered by TMZ. Blanch Decl., ¶ 2, Exh. 1. As such, at the very least, Brunette is a limited-purpose public figure as to the very public controversy between him and Engemann and involving two popular reality television shows.

As a public figure, Brunette must prove actual malice by Engemann in connection to the alleged statements to meet his evidentiary burden. *See World Wide Ass'n of Specialty Programs*, 450 F.3d at 1136. This applies to all of his causes of action. Counts One, Two, and Three are all defamation-based and, therefore, require proof of actual malice. *See id.*; *MacKey*, 2025 UT at ¶ 70, n.8. Count Four for False Light requires the same showing of actual malice. *See Cox v. Hatch*, 761 P.2d 556, 559, n.3 (Utah Sup. Ct. 1988). As for Count Five for Tortious Interference with Economic Relations, that claim requires, *inter alia*, intentional interference with existing or potential economic relations <u>*by improper means*</u>. *Davidson*, 2019 UT App at ¶ 55. Here, the improper means are purported to be the alleged statements of Engemann. Complaint, ¶¶ 163–166. Thus, if defamation cannot be proven due to lack of malice, then Count Five cannot be maintained. *See Davidson*, 2019 UT App at ¶ 55. Finally, Count Six for Business Disparagement is treated similarly to slander of title under Utah law and, accordingly, requires actual malice. *See Dillon v. S. Mgmt. Corp.*, 2014 UT 14, ¶ 35 (2014). Therefore, as part of his burden under the Anti-SLAPP Act to establish a *prima facie* case for each of his causes of action, Brunette must meet the high standard of proving actual malice for all his claims to survive dismissal.

### 3.    The alleged statements by Engemann regarding her opinions on sexual assault are not actionable

Brunette's claims arise from two general types of alleged statements. First, Brunette alleges that Engemann has expressed that her opinion is that Brunette touched her sexually without consent. Second, Brunette alleges that Engemann expressed her opinion about what she believes the definition of sexual assault is, what she believes how victims of sexual assault may react to the assault, and what consent is. Putting aside the first kind of opinion for now,[3] the second set of opinions are not actionable as defamation. Rather, they are nondefamatory opinions which no claim can be based on. Therefore, the part of each of Brunette's causes of action that rely on these opinions should be dismissed. *See* Utah Code § 78B-25-103 (permitting dismissal of all "or part of the cause of action").

"Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *West v. Thomson Newspapers*, 872 P.2d 999, 1008 (Utah Sup. Ct. 1994). However, even if a statement is defamatory, the "Utah Constitution provides an independent source of protection for expressions of opinion." *Id.* at 1013. "Because expressions of pure opinion fuel the marketplace of ideas and because such expressions are incapable of being verified, they cannot serve as the basis for defamation liability." *Id.* at 1015. The Utah Supreme Court has outlined four factors that are "useful in distinguishing fact from opinion": (1) the common usage or meaning of the words used; (2) whether the statement is capable of being objectively verified as true or false; (3) the full context of the statement in which the defamatory statement is made; and (4) the broader setting in which the statement appears. *Id.* at 1018.

Here, the relevant opinions alleged by the Complaint are the following: (1) Engemann's opinion that "unwanted physical touch" is assault (Complaint, ¶¶ 63, 122); (2) Engemann's opinion that victims of sexual assault may continue to have a relationship with their assaulter (*id.* at ¶¶ 93, 98, 100); (3) and a statement by a publicist that Brunette attributes to Engemann that

---

[3] Engemann intends to address Brunette's contentions regarding these opinions if any of his claims survive this Motion and once the factual record is more developed.

expresses an opinion on the "definition" of sexual assault being "any nonconsensual sexual act or contact" (*id.* at ¶ 117). These are categorically expressions of opinions and not statements of fact that may be verified as true or false.

First, the statements concern abstract definitions about sexual assault, consent, and the conduct of victims. These are subjective and generalized characterizations of certain conduct and behavior. There are not claims about objective facts.

Second, the opinions cannot be objectively verified as true or false. What amounts to consent or constitutes sexual assault, or how victims may behave, is subject to interpretation and depends on context. Where lines should be drawn regarding consent, appropriate physical contact, and what terminology properly describes various interactions is subject to debate and interpretation. Moreover, the opinions regarding the definition of sexual assault are clearly interpretations of what the term may encompass.

Third, the opinions were part of a discussion and/or debate about what constitutes sexual misconduct and consent, and how victims respond to sexual assault. While the opinions may be alleged to be in connected to statements regarding Brunette's own sexual misconduct, they are really part of a broader and more generalized discussion about sexual assault and victims. *See, e.g., id.* at ¶¶ 63, 91, 93, 98, 100, 117, 122. The alleged opinions amount to Engemann's subjective view on contested social concepts, not objectively verifiable facts.

Fourth and finally, the overall setting confirms these statements as opinions. Any opinions expressed on *The Secret Lives of Mormon Wives* should be understood for what they are: opinion. Reality television is a medium in which viewers understand participants to be expressing subjective viewpoints, engaging in debate, and presenting their personal perspectives. Reality television is not known to be an objective presentation of fact; it is entertainment programming in which cast members offer their opinions, reactions, and characterizations of events. Similarly, alleged statements on social media and in interviews were made in inherently opinion-based contexts—i.e., social media commentary and personal interviews—where readers and listeners expect subjective views, not verified factual reporting.

If a statement expresses "a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). This is exactly what the statements are alleged to be here. They are solely opinion that, as alleged, set forth subjective views and interpretations. Such opinions cannot support any of Brunette's claims. Thus, the portion of each claim that relies on these statements should be dismissed. *See* Utah Code § 78B-25-103.

**4.     By Brunette's own allegations, he invited and induced the alleged statements, barring any claim based upon them**

Brunette's claims against Engemann should be dismissed under the Anti-SLAPP Act because, as alleged, Brunette impliedly consented to the alleged actionable statements. Brunette directly challenged Engemann to come forward and address his assertion that he was not invited to a Hulu event because of some history between them, implied by Brunette to be romantic or sexual. Complaint, ¶ 58. Brunette then alleges that Engemann made her statements "in response" to Brunette's own assertion. *Id.* at ¶ 59. Brunette cannot complain about statements he expressly alleges he invited and induced. As such, Brunette cannot state a cause of action upon which relief can be granted as to any of his claims. *See* Utah Code § 78B-25-107(1)(c)(ii).

"'One of the primary purposes of the doctrine of consent in defamation law is to prevent a party from inviting or inducing indiscretion and thereby laying the foundation of a lawsuit for his own pecuniary gain.'" *Conlay v. Baylor Coll. of Med.*, 688 F. Supp. 2d 586, 591 (S.D. Tex. 2010) (quoting *Royer v. Steinberg*, 90 Cal. App. 3d 490 (1979), which, in turn, cited Prosser on Torts at 784 (4th ed.1971) for this proposition); *Sleepys LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 199–200 (2d Cir. 2015) ("[I]n some circumstances, a person's intentional eliciting of a statement she expects will be defamatory can constitute her consent to the making of the statement."); *Cox v. Nasche*, 70 F.3d 1030, 1031, n.2 (9th Cir. 1995) ("'[T]he consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation'"). In fact, "conduct that gives apparent consent" to the alleged defamatory statements "is sufficient to bar recovery." Restatement (Second) of Torts § 583 (Am. Law Inst. 1977).

Here, Brunette stated in a public video he posted that he was "uninvited to the [Hulu] function cus a 30yo mormon wife's scared I'll tell her husband the truth." Complaint, ¶ 58. This video alluded to some interaction with a *The Secret Lives of Mormon Wives* star—i.e., Engemann—that would affect that woman's relationship with her husband (such as infidelity), asserts that Engemann somehow manipulated Hulu into excluding Brunette from the event, and that there is some "truth" that Brunette knows that Engemann is hiding from her husband. By his own allegations, Brunette made this video to get a response from Engemann. Brunette then alleges that, on the same day as his post, "*and in response to* [*Brunette's*] *post* . . . Engemann commented about the video on social media with the false accusation that [Brunette] was a sexual predator." *Id.* at ¶ 59 (emphasis added). As alleged, Engemann was then forced to further explain her opinions on her interactions with Brunette and her opinion on the definition of sexual assault. *Id.* at ¶¶ 62–69, 85–100, 117–122.

By his own allegations, Brunette invited and induced Engemann to respond to his assertion, which she did. *See id.* Rather than remain silent on his interactions with Engemann, Brunette consciously chose to raise the issue in a social media post, prompting Engemann to respond with her own opinion on what transpired between them. Brunette cannot complain about alleged statements he pleads he invited and induced. This is a total defense to all of Brunette's causes of action against Engemann. *See Sleepys*, 779 F.3d at 199–200; *Cox*, 70 F.3d at 1031, n.2; *Conlay*, 688 F. Supp. 2d at 591.

### 5.    The alleged facts for Count Five are not actionable

Separate and apart from the above bases for dismissal (which apply to all claims), Count Five for intentional interference with economic relations should also independently be dismissed because the specific allegations that make up the claim are not actionable. *See* Utah Code § 78B-25-107(1)(c)(ii). Because the claim fails based on its own allegations, no evidentiary showing will save it from dismissal under the Anti-SLAPP Act.[4]

---

[4] Even if the allegations were sufficient for pleading—which they are not—Brunette still must establish a *prima facie* case as to each essential element, as he must for all his claims. *See* Utah Code § 78B-25-107(1)(c)(i).

An intentional interference claim has three general elements: (1) intentional interference by the defendant of the plaintiff's existing or potential economic relations; (2) the interference was by improper means; and (3) the interference caused injury to the plaintiff. *SCO Grp., Inc. v. IBM*, 879 F.3d 1062, 1081 (10th Cir. 2018). Here, Brunette's claim does not, and cannot, meet these elements.

Brunette contends that there was intentional interference with economic relations because of the alleged statements by Engemann in the Complaint. Complaint, ¶¶ 164–166. Despite alleging widespread harm to his business interests, Brunette identifies only three supposed business relations he alleges were impacted by the alleged statements. He contends that he (1) lost out on an appearance on an unnamed "popular reality dating show"; (2) "lost a lucrative opportunity to guest DJ" at a nightclub in Las Vegas; and (3) was not invited to the reunion for the third season of *The Secret Lives of Mormon Wives*. Complaint, ¶¶ 125–127. At no point does Brunette allege that Engemann knew of his supposed potential appearance on a reality dating show or of the guest DJ opportunity. Nor does Brunette allege that Engemann knew that Brunette was to be at the reunion event. Instead, as to the reunion, all that Brunette alleges is that some unidentified person told him that Engemann did not want to be at the same event. *Id.* at ¶ 127. This is not the same as Engemann specifically knowing that Brunette was in fact invited.

These facts do not show that Engemann intended to interfere with these asserted opportunities. For intentional interference, there must be "knowledge of the . . . relations or expectancy on the part of the interferer." *Searle v. Johnson*, 646 P.2d 682, 683 (Utah Sup. Ct. 1982). Here, there is no such knowledge or specific intent to interfere with these alleged opportunities. The fact that Brunette may have lost out on these opportunities is not actionable. More must be shown as to Engemann's intent and knowledge. Moreover, there is also nothing in the Complaint that Engemann's "predominant purpose" was to injure Brunette in connection to these asserted opportunities. *See Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 18 (2008). Given all this, Count Five is totally defective and cannot be maintained.

Additionally, for the season three reunion of *The Secret Lives of Mormon Wives*, Brunette fails to allege that there was anything independently wrongful about Engemann's conduct. For the interfering conduct to be actionable, it must be unlawful in some way or in violation of an

established standard of a trade or profession. *See C.R. Eng. V. Swift Transp. Co.*, 2019 UT 8, ¶ 48, 437 (2019). The allegation that Engemann did not want to attend the same event as Brunette is not unlawful or otherwise improper. Engemann has the right to not want to attend an event if Brunette is also present, and she has the right to express that opinion.

The facts that make up Count Five are not actionable. Therefore, Brunette cannot state a cause of action upon which relief can be granted and the claim must be dismissed under the Anti-SLAPP Act. *See* Utah Code § 78B-25-107(1)(c)(ii).

Additionally, Brunette cannot save this claim by materially changing it with new facts in his opposition to this Motion. The Court's analysis under the Anti-SLAPP Act is limited to the claims as pleaded and any evidence offered as to those specific claims. As stated by the Utah Supreme Court, for the plaintiff's evidentiary burden, evidence is considered for "the claims under review," which means the claims alleged in the complaint that implicate the Act. *See MacKey*, UT at ¶ 38. It makes no sense for a plaintiff to materially change their claims in response to an anti-SLAPP motion. The motion goes to the claims as pleaded. *See* Utah Code § 78B-25-102(2)(c) (Applying to "causes of action asserted" in a complaint).

## II. Alternatively, each cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)

In addition to the Anti-SLAPP Act, Fed. R. Civ. P. 12(b)(6) also provides an independent basis for dismissal of Brunette's claims based on pleading deficiencies. None of these deficiencies can be cured with amendment and, therefore, the Complaint should be dismissed with prejudice.

### A. Standard for dismissal under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Conclusory allegations are not enough to withstand a motion to dismiss." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

**B.      Brunette cannot state a claim based on subjective opinions**

As discussed above in Discussion Section I.C.3., at least part of each cause of action is based on subjective opinions alleged to be made by Engemann as to what constitutes sexual assault, consent, and the conduct of sexual assault victims. As pleaded, these are nonactionable opinions. Therefore, the part of each cause of action that supposedly arises from these opinions fails to state a claim and should be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

**C.      Brunette's invitation and inducement of the alleged statements warrants dismissal of all causes of action**

For the same reason all of Brunette's claims should be dismissed under the Anti-SLAPP Act based on implied consent to the alleged statements (see Discussion Section I.C.4.), they should also be dismissed under Fed. R. Civ. P. 12(b)(6).

**D.      The Complaint fails to sufficiently plead the elements for Count Five**

For the same reasons Count Five fails to state a claim to survive dismissal under the Anti-SLAPP Act (see Discussion Section I.C.5.), it fails to state a claim for Fed. R. Civ. P. 12(b)(6) purposes, warranting dismissal.

## CONCLUSION

Engemann respectfully requests that Brunette's Complaint be dismissed with prejudice pursuant to Utah Code sections 78B-25-101, *et seq.*, or, alternatively Fed. R. Civ. P. 12(b)(6), and award Engemann her attorneys' fees in an amount to be determined.


DATED February 17, 2026.

/s/*Julianne P. Blanch*
Julianne P. Blanch
PARSONS BEHLE & LATIMER

Attorneys for Defendant DEMI ENGEMANN

4901-1866-5872.v1                                    19

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February 2026 I filed the foregoing MOTION TO DISMISS using the Court's ECF filing system which in turn served all counsel of record.

/s/*Michelle Orton-Brown*

Legal Asst, Parsons Behle & Latimer

4901-1866-5872.v1                                           20