# Exhibit 1

**DYNAMIS LLP**
ERIC S. ROSEN (*pro hac vice*)
BROOKE WATSON (*pro hac vice*)
erosen@dynamisllp.com
bwatson@dynamisllp.com
(617) 802-9157
175 Federal Street, Suite 1200
Boston, Massachusetts 02110

JAMIE H. SOLANO (*pro hac vice*)
CAROLINE McHUGH (*pro hac vice*)
jsolano@dynamisllp.com
cmchugh@dynamisllp.com
(973) 295-5495
233 Broadway, Suite 1750
New York, NY 10279

YUSEF AL-JARANI (*pro hac vice*)
yaljarani@dynamisllp.com
(213) 283-0685
1100 Glendon Avenue, 17th Floor
Los Angeles, California 90024

**Parkinson | Benson | Potter**
D. Loren Washburn
Cliff Parkinson
loren@pbp.law
cliff@pbp.law
801-643-1420
2750 Rasmussen Rd., Suite H-107
Park City, UT 84098

*Attorneys for Plaintiff Marciano Brunette*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| MARCIANO BRUNETTE,<br><br>    *Plaintiff*,<br><br>v.<br><br>DEMI ENGEMANN and JEFF JENKINS PRODUCTIONS, LLC,<br><br>    *Defendants*. | No. 2:25-cv-01102-TC-DAO<br><br>**DECLARATION OF MARCIANO BRUNETTE IN SUPPORT OF HIS OPPOSITION TO JJP'S MOTION FOR SUMMARY JUDGMENT** |

I, Marciano Brunette, declare as follows:

1. I am the Plaintiff in the above-captioned case and was a castmate on *Vanderpump Villa* and *The Secret Lives of Mormon Wives* ("*Mormon Wives*").

2.  I am familiar with Demi Engemann, the defendant in this case, as well as JJP, the defendant production company that produced *Mormon Wives*.

3.  The allegations regarding my interactions with Engemann that are set forth in the Complaint are true and accurate.

4.  At no time did I ever sexually assault Engemann. I am not a sexual predator. I did not lie about the nature of my relationship with Engemann. I have never been violent with Engemann in any way.

5.  After Engemann began falsely stating that I had sexually assaulted her and that I was a sexual predator, JJP stopped filming with me. JJP did not ask me whether the allegations were true or whether I had stayed in contact with Engemann after filming *Vanderpump Villa* with her. Had JJP asked, I would have provided them with the information relayed in the Complaint and denied the accusations because they are false. As far as I am aware, JJP did not investigate Engemann's sexual-assault allegations at any point prior to me commencing this lawsuit.

6.  Both Engemann and myself were wearing microphones when she said "I love you" to me and when we kissed. I believe it is likely that, at minimum, audio footage of those interactions were captured.

7.  After my lawyers filed this lawsuit for me, in January 2026, I had plans to travel to Salt Lake City, Utah and visit Chase McWhorter, with whom I am friends. Mr. McWhorter is a castmate on *Mormon Wives*.

8.  While I was on my way to Utah, Mr. McWhorter called me and asked me what I thought about permitting filming of *Mormon Wives*. The group of us were planning on staying at a residence we had rented, and Mr. McWhorter told me that JJP was planning on filming at the rented

residence. Mr. McWhorter asked me if I would be okay filming. I told Mr. McWhorter that I needed to think about it and speak with my lawyers.

9.  After much back and forth with Mr. McWhorter, it was ultimately decided that I would agree to film at a nearby bar. I did not speak directly with JJP regarding the filming; Mr. McWhorter handled those communications and logistics. As far as I am aware, no one from JJP spoke with my attorneys, and no one from JJP said that I would need to sign a contract with them in order to film on the show.

10. JJP filmed me and Mr. McWhorter for approximately one hour at a bar in Park City, Utah. Prior to filming, I did not sign any paperwork or agree to anything (other than that it would be okay for JJP to film me).

11. During filming, I spoke with some of the JJP representatives and we exchanged pleasantries. We did not discuss how they would be using the footage.

12. When JJP was done filming, a female representative of JJP told me that she needed me to sign a release. I asked her if I actually needed to sign it because I had signed these types of documents for JJP previously. I also asked her how I was going to be paid. My 2025 Performer Agreement laid out how much money JJP was supposed to pay me for my appearances on the show.

13. The woman from JJP in response said something to the effect that I needed to sign whatever document she was referencing, and that they had my bank account information. At the time this exchange was occurring, she did not have a copy of the document she was referencing for me to see. She did not explain that she wanted me to sign a document to settle my outstanding claims in this case against JJP, and it never occurred to me that whatever she was presenting for me to sign

had anything to do with this lawsuit or anything beyond the hour of filming that we had already completed at the bar.

14. After telling me that I had to sign the document and that they had my banking information, the woman from JJP provided me with a "QR code," which I scanned using my phone. The "QR code" directed me to a document displayed in small print on my phone, which I signed from my phone.

15. I had no idea that the document I signed had anything to do with this lawsuit, and I did not intend to release any of my claims against JJP or Engemann.

16. Had JJP told me that what they were presenting to me had anything to do with this lawsuit, I would have needed to present the document to my lawyers who are representing me in this case.

17. JJP has not paid me anything for the hour of filming in Utah and have not paid for my claims in this lawsuit.

18. Following my letting JJP film me for approximately an hour at a bar in Utah, I did not hear anything about the document I signed until JJP filed its motion for summary judgment claiming that I released the claims in this lawsuit. That certainly was never my intent.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 26, 2026

Marciano Brunette

**Docusign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 18285215-E8A8-43CE-B631-8E57F659DDD3 | | Status: Completed |
| Subject: Marciano Declaration.pdf | | |
| Source Envelope: | | |
| Document Pages: 4 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Marciano Brunette |
| AutoNav: Enabled | | marcianobrunette@yahoo.com |
| EnvelopeId Stamping: Disabled | | IP Address: 68.96.124.48 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Marciano Brunette | Location: DocuSign |
| 3/27/2026 1:55:11 PM | marcianobrunette@yahoo.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Marciano Brunette<br>marcianobrunette@yahoo.com<br>Security Level: Email, Account Authentication (None) | *[signature]*<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 68.96.124.48<br>Signed using mobile | Sent: 3/27/2026 1:55:11 PM<br>Viewed: 3/27/2026 1:55:18 PM<br>Signed: 3/27/2026 1:55:44 PM<br>Freeform Signing |

**Electronic Record and Signature Disclosure:**
Not Offered via Docusign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 3/27/2026 1:55:11 PM |
| Certified Delivered | Security Checked | 3/27/2026 1:55:18 PM |
| Signing Complete | Security Checked | 3/27/2026 1:55:44 PM |
| Completed | Security Checked | 3/27/2026 1:55:44 PM |

| Payment Events | Status | Timestamps |
|---|---|---|