**DYNAMIS LLP**
ERIC S. ROSEN (*pro hac vice*)
BROOKE WATSON (*pro hac vice*)
erosen@dynamisllp.com
bwatson@dynamisllp.com
(617) 802-9157
175 Federal Street, Suite 1200
Boston, Massachusetts 02110

JAMIE H. SOLANO (*pro hac vice*)
CAROLINE McHUGH (*pro hac vice*)
jsolano@dynamisllp.com
cmchugh@dynamisllp.com
(973) 295-5495
233 Broadway, Suite 1750
New York, NY 10279

YUSEF AL-JARANI (*pro hac vice*)
yaljarani@dynamisllp.com
(213) 283-0685
1100 Glendon Avenue, 17th Floor
Los Angeles, California 90024

**Parkinson | Benson | Potter**
D. Loren Washburn
Cliff Parkinson
loren@pbp.law
cliff@pbp.law
801-643-1420
2750 Rasmussen Rd., Suite H-107
Park City, UT 84098

*Attorneys for Plaintiff Marciano Brunette*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| MARCIANO BRUNETTE,<br><br>    *Plaintiff*,<br><br>v.<br><br>DEMI ENGEMANN and JEFF JENKINS PRODUCTIONS, LLC,<br><br>    *Defendants*. | **PLAINTIFF MARCIANO BRUNETTE'S MOTION UNDER RULE 56(d) TO DENY OR DEFER JEFF JENKINS PRODUCTIONS LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>CASE NO: 2:25-cv-01102-TC-DAO<br><br>District Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Plaintiff Marciano Brunette ("Brunette" or "Plaintiff") hereby files this Motion to Defer or Deny Defendant Jeff Jenkins Productions, LLC's ("JJP's") Motion for Summary Judgment.

## RELIEF SOUGHT AND GROUNDS IN SUPPORT

Brunette moves the Court under Rule 56(d) of the Federal Rules of Civil Procedure to deny or defer JJP's Motion for Summary Judgment (*see* ECF No. 33)[1] to allow Brunette to commence and take the fact discovery specified below. The grounds for the requested relief are that (1) while Brunette has tried to stipulate or request materials from JJP, fact discovery has not commenced because this lawsuit has just been filed; however, JJP has Answered the Complaint and the posture of the case is now appropriate to proceed forward with discovery; (2) Brunette needs to take discovery to respond fully and fairly to the Motion for Summary Judgment, which implicates questions of whether JJP's conduct was undertaken intentionally, willfully, or recklessly and questions surrounding JJP communicating a legal document to Brunette without the knowledge or consent of his lawyers; (3) the information that Brunette needs to obtain through that discovery is in the exclusive control of JJP and other third parties (and Brunette needs authority to commence third-party discovery); and (4) the parties only recently had a Rule 26 conference, and JJP has resisted engaging in discovery, notwithstanding Brunette's diligence.

## STATEMENT OF FACTS

1.      The Complaint in this case alleges that JJP, the producer of the reality show *The Secret Lives of Mormon Wives*, knowingly or, at best, recklessly published repeated lies about Brunette being a sexual predator and having sexually assaulted co-defendant Demi Engemann. The Complaint

---

[1] JJP's Motion at ECF No. 33 is actually three motions in one: a motion for judgment on the pleadings, a motion for summary judgment, and a motion for fees under state law. This motion pertains only to the portion of JJP's Motion that seeks summary judgment.

1

alleges several intentional torts against JJP for publishing Engemann's false accusations: defamation, defamation *per se*, defamation by implication, and false light. (Complaint, ECF No. 1 ¶¶ 133–162.)

2.      JJP has filed an Answer to the Complaint and contests, among other things, that it acted with the requisite state of mind, *i.e.*, malice. (Answer, ECF No. 32).

3.      As set forth in the Complaint, there is some publicly available information that JJP had that made clear Engemann's false accusations of sexual assault were fabricated for ratings. Castmates let JJP know that Engemann was lying, JJP observed Engemann embellish a story about being "shoved" by another man even though footage made clear that did not occur, and Engemann's story about sexual assault was delayed and changed over time (but always consisted of vague details). (Compl. ¶¶ 36–38, 54, 66, 104, 106, 108.)

4.      But other evidence tending to show JJP's knowledge, motivation, and reckless disregard for the falsity of the sexual assault accusations are exclusively in the control of JJP. For example, the Complaint alleges upon information and belief that JJP had access to other footage from the series where Engemann said the sexual assault took place (the executive producer of which has said the footage confirms there is reason to doubt Engemann's lies), but JJP did not review it. JJP did not conduct an investigation into Engemann's accusations prior to publishing her lies—suggesting that JJP did not actually believe that she had been sexually assaulted and did not care to verify whether the accusations were true or false. JJP stopped filming with Brunette without explanation and chose not to portray his side of the story in the Series (which amplified Engemann's lies further). (Compl. ¶¶ 102, 107, 110–113, 116.)

5.      Additionally, JJP has access to information from the castmates and Engemann that is not publicly available. Not all video and audio footage that JJP has collected during the course of its filming and production has been made public. And JJP's producers have interactions with, and learn

information about, castmates and other third parties that are not filmed, much less publicly aired. All of the information that JJP had available to it at the time it decided to publish and amplify her false statements is relevant to the issue of whether JJP acted with malice. All of this information is discoverable and will shed light on the issue that JJP disputes in this case: whether it acted intentionally or recklessly when it repeatedly published Engemann's lies as a part of its hit series.

6.      Defendant Engemann—the person who fabricated the allegations to shift the attention away from her flirtatious behavior—is also expected to have significant discovery that will tend to show what JJP knew or should have known about the falsity of her accusations. According to Engemann, JJP encouraged castmates to come up with "cliffhangers" (*i.e.*, create salacious storylines that were not really true) to make their show less boring. (Compl. ¶¶ 78–79.)

7.      Third parties are also expected to have access to discovery that will evidence JJP's misconduct. Engemann's castmates told JJP that Engemann was lying as she created this web of lies. (Compl. ¶¶ 90, 104.)  Both *The Secret Lives of Mormon Wives* and *Vanderpump Villa* (the show during which Engemann met Brunette and now lies and says is where the "sexual assault" occurred) are distributed by Hulu, and JJP had access to footage from *Vanderpump Villa*. The executive producer of *Vanderpump Villa* has confirmed the footage shows there is good reason to doubt Engemann's lies. Discovery regarding JJP's efforts and coordination with Hulu and with *Vanderpump Villa* to actually ascertain what happened is relevant to the question of JJP's intentional or reckless misconduct.

8.      Plaintiff's counsel has tried to obtain discovery from JJP as quickly as possible. For example, on January 27, 2026, Plaintiff's counsel emailed JJP's counsel and asked if they would be willing to stipulate to a litigation schedule. (ECF 56-3, Solano Decl. ¶ 3.)  JJP's counsel declined. *Id.*

9.      Notwithstanding their refusal to engage in discovery, JJP has filed a Motion for Summary Judgment. (ECF No. 33.)

10. The Motion for Summary Judgment does not defend JJP's behavior on the merits. Instead, JJP relies on two documents that it claims entitle it to dismissal of Brunette's claims.

11. The first document, a 2025 Performer Agreement, is governed by New York law. New York law prohibits parties from immunizing or releasing conduct that is willful, intentional, or grossly negligent. If JJP's conduct was willful, intentional, or grossly negligent, it cannot be within the scope of a New York law release.

12. The second document (the "2026 Document") was sent to Brunette after he filed this lawsuit and after JJP's lawyers knew that he was represented by counsel. As set forth in Brunette's Opposition to JJP's Motion for Summary Judgment, many questions surrounding how or why that document was sent to Brunette affect its admissibility and its enforceability, including whether JJP's lawyers violated Utah's Professional Rules of Conduct that prohibit communicating and specifically from engaging in settlement negotiations with a represented party without his counsel's permission. *See* Rules 4.2(a), 4.2(e)(2), 5.3, 8.4. Plaintiff's counsel has raised this concern with JJP's counsel. JJP has not provided any evidence regarding the facts and circumstances surrounding the 2026 Document. (ECF 56-3,Solano Decl. ¶¶ 8–10, 12.)

13. The circumstances surrounding the execution of the 2026 Document are relevant to understand whether it could even be considered a contract, how to interpret its ambiguous text, and whether it is unconscionable. (*See* ECF 56, Pl.'s Opp'n to JJP's Mot. at 35–46.)

14. Plaintiff's counsel had no idea that JJP was sending legal documents to its client, and did not learn of it until JJP publicly filed the document with its Motion for Summary Judgment. (ECF 56-3, Solano Decl. ¶¶ 4–5.)

15. Upon learning that JJP had sent what they now characterize as a "settlement agreement" to Brunette, our client, without our knowledge or permission, on February 24, 2026, the

4

undersigned sent JJP's lawyers a cease-and-desist letter demanding that JJP stop communicating with Plaintiff outside the presence of his counsel and requesting all communications about the 2026 Document. (ECF 56-3, Solano Decl. ¶ 8.)

16.     To date, JJP has not produced any communications about the 2026 Document, even after Plaintiff's counsel raised the issue again during the parties' Rule 26 conference.

17.     To date, Plaintiff has not even received initial disclosures from the Defendants, much less traditional discovery.

18.     In short, Plaintiff has not had a fair opportunity to conduct discovery in this case. (*See generally* ECF 56-3, Solano Decl.)

### ARGUMENT

Plaintiff requests pursuant to Federal Rule of Civil Procedure 56(d) that the Court defer any summary judgment determination until after he has had an appropriate opportunity to engage in discovery. The Supreme Court, the Tenth Circuit, and courts in this District have made clear that summary judgment is not appropriate where, as here, the nonmoving party has not had the opportunity to discover information relevant to the opposition. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) ("summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition"); *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984) (request for deferment due to lack of discovery should be "treated liberally"); *Millrock Inv. Fund 1, LLC v. Healthcare Sols. Mgmt. Grp., Inc.*, No. 2:23-CV-00157-RJS-DAO, 2024 WL 5057654, at *2 (D. Utah Dec. 10, 2024) (citing *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000)). "Rule 56(d) motions should be granted when the nonmovant shows via affidavit or declaration (1) the probable facts are not available, (2) why those facts cannot be presented currently, (3) what steps

have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Millrock Invs. Fund 1, LLC*, 2024 WL 5057654, at *2 (citing *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016)).

Here, as reflected in the above and supported by the Declaration of counsel (ECF 56-3), Plaintiff has not had the opportunity to discover information essential to his opposition. Plaintiff's counsel has tried to stipulate to early discovery in this case, but Defendants have refused. We are at the outset of the case, and much of the discovery is in the possession of Defendants and other third parties. Plaintiff needs the powers of the Federal Rules of Civil Procedure to fully obtain discovery to support his claims. Permitting him time to conduct discovery *before* having to champion evidence to definitively prove his claims is appropriate under the circumstances here, where publicly available information reflects that JJP had every reason to doubt, and no reason to believe, that Engemann's sexual assault allegations were anything other than malicious lies to deflect her own bad behavior and, perhaps, to curry favor with JJP, who encouraged its castmates to think up storylines for the show.

*First*, more specifically, Plaintiff needs the opportunity to conduct discovery regarding JJP's gross negligence and/or intentional misconduct, in light of JJP's reliance on a 2025 Performer Agreement that JJP argues contains a release of these intentional tort claims. (*See* JJP's Motion for Summary Judgment at 19–21.) Intentional, willful, and grossly negligent misconduct cannot be released as a matter of New York public policy (the law that Jeff Jenkins has conceded governs the releases they have introduced). *See, e.g.*, *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384–85 (1983) (a general release "no matter how flat and unqualified its terms, *will not* exonerate a party from liability under all circumstances … [and] will not apply to exemption of willful or grossly negligent acts") (emphasis added); *Great N. Assocs., Inc. v. Cont'l Cas. Co.*, 596

N.Y.S. 2d 938, 940 (3d Dept. 1993) (releases cannot "insulate the releasee from intentional, willful or grossly negligent acts"); *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554 (1992) ("It is the public policy of this State[] that a party may not insulate itself from damages caused by grossly negligent conduct.") (collecting cases).

Plaintiff needs the opportunity to conduct full discovery from JJP, Engemann, and third parties to gather evidence in support of its intentional tort claims that JJP published Engemann's salacious lies about sexual assault that JJP published intentionally (or, at minimum, with reckless disregard) to the statement's falsity, in order to have the opportunity to appropriately prove why the 2025 Performer Agreement does not cover JJP's conduct at issue in this case. Aside from what is publicly available, all of this discovery is in Defendants' and third parties' possession, and Defendants have resisted discovery.

*Second*, Plaintiff also has not had the opportunity to obtain discovery regarding the 2026 Document drafted by JJP's counsel that JJP sent to Brunette after this lawsuit commenced. The 2026 Document is relevant to resolve the Motion for Summary Judgment because JJP now claims the 2026 Document acts as a settlement release of the claims in this case. (*See* JJP's Motion for Summary Judgment at 19–21.) Plaintiff's counsel asked for all communications regarding this document over a month ago, and JJP has not produced any such communications. (ECF 6-3, Solano Decl. ¶¶ 8–10.)

As set forth in Plaintiff's Opposition to JJP's Motion, several unknown facts that are discoverable and exclusively within JJP's or third parties' control are relevant to whether the 2026 Document is admissible, is enforceable as a contract and/or "settlement" of these claims, or is unconscionable. (*See* ECF 56, Pl.'s Opp'n to JJP's Mot at 35–46.)

JJP's lawyers' decision to draft a document Defendant now claims is a release, communicate and send that document to Plaintiff for his signature without the knowledge or permission of his counsel, and then further ratify that decision by attempting to affirmatively use it as evidence of an enforceable settlement release in this litigation, seemingly violates Utah's Rules of Professional Conduct, rendering the document potentially unenforceable and inadmissible. *See* Utah R. Prof'l Conduct 4.2(a), 4.2(e)(2), 5.3, 8.4; *Featherstone v. Schaerrer*, 2001 UT 86, 34 P.3d 194; (ECF 56, Pl.'s Opp'n to JJP's Mot. at 35–38). Discovery surrounding this issue is appropriate under the circumstances. *Featherstone*, 2001 UT 86, ¶ 35 ("in situations where a court has determined that an attorney asserting work product immunity committed an ethical violation in obtaining the evidence at issue, the court must determine any applicable work product privilege vitiated and thus order disclosure of the evidence so long as the disclosure would not traumatize the adversary process more than the underlying legal misbehavior") (internal quotation omitted).

Discovery surrounding the factual circumstances of JJP presenting and now using the 2026 Document is also necessary to fully respond to JJP's Motion for Summary Judgment. As reflected in Plaintiff's Opposition Brief (and supported by Plaintiff's Declaration), Plaintiff agreed to be filmed at a bar in Utah in January 2026 when his friend asked him if it would be okay. *See* ECF 56-2, Brunette Decl. ¶¶ 8–9. Plaintiff did not have any conversations with JJP about the conditions of them filming prior to or during the filming at the bar. *Id.* ¶¶ 9–11. After filming, a representative from JJP approached Brunette and told him he "had" to sign a release. *Id.* ¶¶ 13–14. She did not present him with a document. Brunette questioned whether he actually needed to sign it because he had signed those types of documents for JJP previously. *Id.* ¶ 12. Brunette also asked the JJP representative how he was going to be paid. *Id.* Brunette's prior 2025 Performer Agreement laid out how much money JJP was supposed to pay him for show appearances. *Id.*

The JJP representative, in response to Brunette's questions, told Brunette that he had to sign the release and that they had his bank account information. *Id.* ¶¶ 13–14. She made no mention that the release would address anything other than the filming that had just transpired. *Id.* ¶ 13. The JJP representative then presented Brunette with a "QR code," which Brunette scanned using his phone. *Id.* ¶ 14. The "QR code" sent him the 2026 Document, which had been drafted by Julie Hunt, JJP's in-house lawyer. The document displayed in small print on his phone, which Brunette signed. *Id.* Brunette did not think that the 2026 Document had anything to do with this lawsuit and did not intend to release any of his claims against JJP or Engemann. *Id.* ¶ 15.

Plaintiff has raised several problems with construing the 2026 Document as a "settlement agreement" of this lawsuit, but in order to fully respond to JJP's Motion for Summary Judgment, Plaintiff needs the opportunity to obtain discovery from JJP regarding their understanding of Brunette's agreement to filming, the statements made by JJP's representative to Brunette and her intentions and understanding of what they were agreeing upon, and how (and when) the 2026 Document became viewed by JJP as a "settlement" of this case (if ever, beyond the creative arguments of its lawyers).

All of this discovery is relevant to determine whether there was a meeting of the minds, how the 2026 Document should be construed given the parties' intent at the time, and whether enforcement would be—as Plaintiff contends—unconscionable. (*See* ECF 56, Pl.'s Opp'n to JJP's Mot. at 38–46); *see also, e.g.*, *1-800 Contacts, Inc. v. Weigner*, 2005 UT App 523, ¶ 4, 127 P.3d 1241 ("In determining whether the parties created an enforceable contract, a court should consider all preliminary negotiations, offers, and counteroffers and interpret the various expressions of the parties for the purpose of deciding whether the parties reached agreement on complete and definite terms."); *Lubrication & Maint., Inc. v. Union Res. Co.*, 522 F. Supp. 1078, 1081 (S.D.N.Y. 1981)

("Determination of the intent of the parties at the time they entered into the contract is not governed by their unexpressed subjective views, but rather by what they wrote, their acts, conduct and all surrounding circumstances.").

In sum, Plaintiff will use all formal discovery tools available to it under the Federal Rules of Civil Procedure over the next several months to obtain evidence that establishes facts that overcome JJP's Motion for Summary Judgment before discovery is closed in this matter. Importantly, this discovery is necessary because JJP is contending, in a vacuum, that these documents absolve JJP of its intentional misconduct for reasons that have nothing to do with the merits of Plaintiff's claims. Plaintiff needs this requested discovery to prove that neither document stops his entitlement to relief. Without discovery into these issues, Plaintiff is not able to discover information within JJP's, Engemann's and third parties' control that is essential to oppose fully JJP's Motion for Summary Judgment, *i.e.*, information that would make clear that these documents are unenforceable as releases of Plaintiff's claims. Plaintiff is at a loss of this information, notwithstanding due diligence, because Defendant has not produced discovery and has not agreed to proceed with discovery at this early stage in the case. As a result, Brunette's request for the opportunity to conduct discovery before this Court adjudicates the Motion for Summary Judgment is crucial to Plaintiff's ability to rebut completely JJP's Motion for Summary Judgment. *See Gutierrez v. Cobos*, 841 F.3d 895, 909 (10th Cir. 2016) (implying that a Rule 56(d) motion may be granted if the requested discovery would assist the nonmovant in overcoming summary judgment).

## CONCLUSION

Because discovery would allow Plaintiff to obtain facts needed to rebut JJP's Motion for Summary Judgment, and for the reasons above, the Court should grant this Motion and either deny

10

JJP's Motion without prejudice or defer it until after the close of fact discovery.

Dated:  March 27, 2026

Respectfully submitted,

**Parkinson | Benson | Potter**

*/s/ D. Loren Washburn*
D. Loren Washburn
Cliff Parkinson
loren@pbp.law
cliff@pbp.law
801-643-1420
2750 Rasmussen Rd., Suite H-107
Park City, UT 84098


**DYNAMIS LLP**

*/s/ Jamie Hoxie Solano*
Eric S. Rosen (*pro hac vice*)
Jamie H. Solano (*pro hac vice*)
Brooke Watson (*pro hac vice*)
Yusef Al-Jarani (*pro hac vice*)
Caroline McHugh (*pro hac vice*)

*Attorneys for Plaintiff Marciano Brunette*

11

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served the foregoing: **PLAINTIFF MARCIANO BRUNETTE'S MOTION UNDER RULE 56(D) TO DENY OR DEFER JEFF JENKINS PRODUCTIONS LLC'S MOTION FOR SUMMARY JUDGMENT** on all counsel of record via the Court's e-filing system.

Dated: March 27, 2026.

/s/ D. Loren Washburn
D. Loren Washburn

12