Julianne P. Blanch, USB #6495
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
JBlanch@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendant DEMI ENGEMANN*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARCIANO BRUNETTE,<br><br>Plaintiff,<br><br>vs.<br><br>DEMI ENGEMANN and JEFF JENKINS PRODUCTIONS LLC,<br><br>Defendant. | **DEFENDANT DEMI ENGEMANN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO UTAH'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT OR, ALTERNATIVELY, FED. R. CIV. P. 12(b)(6)**<br><br>Case No. 2:25-cv-01102-DAO<br><br>Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

4915-2106-6397.v1

**INTRODUCTION**

Utah's Uniform Public Expression Protection Act, Utah Code sections 78B-25-101, *et seq.* (the "Anti-SLAPP Act" or "Act"), applies here and mandates dismissal with prejudice of each claim brought by plaintiff Marciano Brunette ("Brunette") against defendant Demi Engemann ("Engemann"). Brunette's claims are deficiently pleaded, are barred by a valid written release, and lack any competent evidence to support them. Alternatively, as to the uncurable pleading deficiencies, Brunette's claims should also be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**DISCUSSION**

**I.      The Anti-SLAPP Act Applies Here**

Brunette asserts that the Supreme Court's January 20, 2026, decision in *Berk v. Choy*, 146 S. Ct. 546 (2026) held that "Utah's Anti-SLAPP statute does not apply in federal court." ECF No. 51 at 1. If this were true—it is not—then *Berk* would have abrogated long-standing federal court precedent applying state anti-SLAPP statutes *in federal court*. Under Brunette's tortured reading of *Berk*, no state's anti-SLAPP law can be applied in federal court because such laws are, according to Brunette, inconsistent with federal law. Brunette's position is a gross misreading of *Berk*, which did not even concern an anti-SLAPP law.

*Berk* solely concerned a totally different issue. Namely, whether Del. Code tit. 18, § 6853, a procedural statute requiring pre-suit declarations of merit in medical malpractice cases, applied in federal court. The Supreme Court found the statute irreconcilably conflicted with the pleading requirements imposed by the Federal Rules, which require only a "short and plain statement of the claim" for pleading purposes. *Berk*, 146 S. Ct. at 554–55. The *Berk* decision cannot be read to mean, as Brunette claims, that all state anti-SLAPP statutes are inapplicable in federal court.

Further, *Berk* did not break new ground but merely echoed the holding of a prior case, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), which the Supreme Court relied on heavily in the *Berk* opinion. *Berk*, 146 S. Ct. at 556–57. In *Shady Grove*, the Supreme Court held that a New York procedural law limiting class actions could not apply in federal court because it conflicted with Federal Rule of Civil Procedure 23. *Shady Grove*, 559 U.S. at 395–406. Just as the

Court in *Berk* held, the Court in *Shady Grove* held that the Federal Rules control when there is an irreconcilable procedural conflict between a state law and the Federal Rules. *See id. Berk's* holding was already established by prior case law such as *Shady Grove*, and it does not adversely impact Engemann's Motion.

Critically, numerous federal courts, including several in this Circuit, have held that *Shady Grove* does not bar application of state anti-SLAPP laws in federal court. *See, e.g., Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1127–33 (D. Colo. 2022); *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1057–61 (D. Kan. 2018); *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1141–43 (9th Cir. 2022); *Project Veritas v. Leland Stanford Junior Univ.*, No. C21-1326 TSZ, 2022 U.S. Dist. LEXIS 88742, at *11–13 (W.D. Wash. May 17, 2022) (applying Washington's Uniform Public Expression Protection Act). Moreover, this District Court has applied Utah's Anti-SLAPP Act well after *Shady Grove. See Lichfield v. Kubler*, No. 2:24-cv-00458-JNP-CMR, 2025 U.S. Dist. LEXIS 192977, at *28–30 (D. Utah Sep. 29, 2025); *UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-CV-163-DAK-CMR, 2024 U.S. Dist. LEXIS 173244, *62 (D. Utah Sep. 24, 2024).

Brunette next claims that the Tenth Circuit "reached the same conclusion in *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659 (10th Cir. 2018)." ECF No. 51 at 2. By "same conclusion," Brunette means that "Utah's Anti-SLAPP State does not apply in federal court." *Id.* at 1–2. However, *Los Lobos* did not involve Utah's anti-SLAPP statute. It concerned *only* New Mexico's anti-SLAPP law, which significantly differs from Utah's law. As noted by the Tenth Circuit, New Mexico's law is merely a "*procedural* mechanism" that is "[u]nlike many other states' anti-SLAPP statutes." *Los Lobos*, 885 F.3d at 668–70. District courts in this Circuit have distinguished *Los Lobos* and continued to apply state anti-SLAPP laws. *See Moreau*, 641 F. Supp. 3d at 1129, n.5; *Caranchini*, 355 F. Supp. 3d at 1057.

Unlike New Mexico's anti-SLAPP law, the Anti-SLAPP Act is not a mere procedural mechanism. Rather, the Anti-SLAPP Act has a substantive purpose: the protection of the exercise of First Amendment rights. *MacKey v. Krause*, 2025 UT 37, ¶ 36 (2025); *UHS of Provo Canyon*, 2024 U.S. Dist. LEXIS 173244, at *10 ("UPEPA is designed 'to prevent . . . the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable

merit.'"). And the Anti-SLAPP Act safeguards First Amendment rights through a burden shifting framework. *See MacKey*, 2025 UT at ¶ 38. The *Los Lobos* court itself recognized that the absence of a similar burden-shifting framework in New Mexico's anti-SLAPP law was critical to its analysis. *See Los Lobos*, 885 F.3d at 670.

Brunette's other arguments against the Anti-SLAPP Act are equally unavailing. Courts are "careful to interpret [anti-SLAPP laws] in a way that avoided collision with the Federal Rules." *Project Veritas*, 2022 U.S. Dist. LEXIS 88742, at *12–13 (Construing Washington's uniform anti-SLAPP law as consistent with the Federal Rules). Legal challenges under the Anti-SLAPP Act are treated in the same way legal challenges under Rule 12(b)(6) are. *See Lichfield*, 2025 U.S. Dist. LEXIS 192977, at *30. Factual challenges may be analyzed under a Rule 56 summary judgment framework. *See, e.g., Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). In fact, the Anti-SLAPP Act expressly permits challenges based on the same standard as a motion to dismiss under Rule 12(b)(6), or the same standard for summary judgment under Rule 56. *See* Utah Code § 78B-25-107(1)(c)(ii).

Contrary to Brunette's assertions, the substantive burden-shifting framework in the Anti-SLAPP Act supports its application here. The Utah Legislature determined that for causes of action arising under Utah law that challenge the exercise of First Amendment rights, there is a heightened substantive burden on the plaintiff. *See* Utah Code §§ 78B-25-102(2), 78B-25-107(1)(c)(i); *Mackey*, 2025 UT at ¶¶ 34–35. It was the lack of a substantive burden-shifting framework in New Mexico's law that weighed *against* applying that law in federal court since that meant the law was purely procedural. *Los Lobos*, 885 F.3d at 670; *see also Moreau*, 641 F. Supp. 3d at 1129, n.5 (Finding the substantive burden-shifting framework in Colorado's anti-SLAPP law to support application of the law in federal court). The Anti-SLAPP Act's burden-shifting framework does not run afoul of the Federal Rules because it does not alter pleading standards. Instead, it places a heightened *substantive* burden on the plaintiff (once the defendant meets its own burden) for claims that impact constitutional free speech rights. *See Mackey*, 2025 UT at ¶¶ 34–35, 38.

As to Brunette's concerns about discovery, federal courts generally do not apply an anti-SLAPP law's automatic discovery stay when factual challenges are made. *See, e.g., Planned Parenthood*, 890 F.3d at 833; *Moreau*, 641 F. Supp. 3d at 1130–31.

As to the award of attorneys' fees to a defendant successful in an anti-SLAPP challenge, that is a substantive aspect of the law, which is fully permitted in federal court. *See Lichfield*, 2025 U.S. Dist. LEXIS 192977, at *30 (finding defendants entitled to an award of fees and costs under the Anti-SLAPP Act); *UHS of Provo Canyon*, 2024 U.S. Dist. LEXIS 173244, at *10 ("If the court determines that UPEPA applies and that [the plaintiff] has failed to state a viable cause of action, the court must dismiss the action and 'award court costs, reasonable attorney fees, and reasonable litigation expenses related to the motion' to [the defendant].")

## II.      Each Cause of Action Against Engemann Should be Dismissed

### A.      Brunette's claims are deficiently pleaded

#### 1.      Interpretations and beliefs as to broad concepts and terms are not actionable

The alleged defamatory statements in Brunette's Complaint fall into two overall buckets. The first bucket includes Engemann's opinion that Brunette touched her sexually without consent. The second bucket includes Engemann's opinions regarding her interpretation of terms and topics related to sexual assault, such as the definition of sexual assault, what generally constitutes consent, and the general behavior of victims. Engemann challenges the Complaint's allegations as to the second bucket of opinions as insufficient to state a claim for Utah Code § 78B-25-107(1)(c)(ii)(A) and Rule 12(b)(6) purposes. As explained in her Motion, Engemann is setting aside issues with the first bucket for now and is only arguing that the statements in the second bucket are not actionable as pleaded. *See* ECF No. 30 at 13.

Brunette ignores the critical distinction between the two buckets of statements and, instead, lumps them all together. Brunette then downplays the second bucket while overemphasizing the allegations as to the first. Rather than address Engemann's opinions as to her interpretation of certain broad topics (sexual assault, consent, victim behavior), Brunette pivots to arguing that he sufficiently alleges the statements accusing him of sexual misconduct. This argument is irrelevant and attempts to sidestep the pleading challenges raised by the Motion. Engemann's statements as to what

happened are different than her interpretation of generalized topics that relate to what happened—i.e., what sexual assault, consent, or victim behavior may mean. The allegations as to the first bucket of statements are not part of the Motion's challenge to the pleadings and are, therefore, totally irrelevant for this Court's analysis of the Motion.

Brunette's blanket recitation of all the statements he claims Engemann made does not refute that, as alleged, certain statements are inherently opinion. These opinions include: (1) Engemann's interpretation of sexual assault as including "unwanted physical touch" (Complaint, ¶¶ 63, 122); (2) her belief that sexual assault victims' behavior may include a continued relationship with their assaulter (*id.* at ¶¶ 93, 98, 100); (3) and a statement by a publicist as to the "definition" of sexual assault including "any nonconsensual sexual act or contact" (*id.* at ¶ 117). These statements are nonactionable opinion. *See West v. Thomson Newspapers*, 872 P.2d 999, 1018 (Utah Sup.Ct. 1994); *Nunes v. Rushton*, 299 F.Supp.3d 1216, 1232 (D. Utah 2018) ("opinions about the legal significance of [the plaintiff's] actions, even opinions that are questionable, are not actionable as defamation"). These statements use common opinion language, cannot be objectively verified as true or false in any specific factual sense (because they are beliefs and personal interpretations of terms and topics), were made in the inherently subjective forum of reality television and social media commentary, and address contested social concepts where reasonable people genuinely disagree. *See id.* The Court should dismiss the portions of each claim that rely on these general opinion statements.

**2.      Consent is a valid defense raised by the face of the Complaint**

Brunette argues that his invitation and inducement of Engemann's statements, which are expressly alleged in the Complaint, should not be a defense to his claims. However, consent is a valid defense to intentional torts under Utah law. *See Elkington v. Foust*, 618 P.2d 37, 40 (Utah Sup.Ct. 1980); *Larsen v. Davis Cty. Sch. Dist.*, 2017 UT App 221, ¶ 35 (2017). This defense may be raised now in connection to Brunette's failure to state a claim under both the Anti-SLAPP Act (specifically, Utah Code § 78B-25-107(1)(c)(ii)(A)) and Rule 12(b)(6) because it is a defense disclosed on the face of the Complaint. *See Frost v. ADT, LLC*, 947 F.3d 1261, 1267 (10th Cir. 2020).

Here, Brunette expressly alleges that the alleged defamatory statements by Engemann were "in response" to Brunette's own public social media post. Complaint, ¶¶ 58–69. Without any

provocation from Engemann, Brunette consciously decided to post a video on his social media calling out Engemann, alluding to some "truth" that he knows that would affect Engemann's relationship with her husband and asserting that Engemann is "scared" of Brunette revealing what that apparent "truth" is. *Id.* Brunette deliberately made his public post vague and devoid of detail to tantalize the public imagination of what could have transpired between him and Engemann that would affect Engemann's relationship with her husband. *See id.* The mention of a "truth" affecting Engemann's marital relationship implies some kind of sexual or romantic interaction between her and Brunette. This is exactly what Brunette wanted the public to take away from his public post. Brunette clearly was attempting to create public engagement through this self-created drama to bolster public interest in him. His public post was also an attempt to bait Engemann into responding, furthering the public drama Brunette was trying to create, and keeping the public spotlight on himself even longer. By eliciting Engemann's response to his own suggestive public post, Brunette cannot now complain of Engemann's response. *See Elkington*, 618 P.2d at 40; *Conlay v. Baylor Coll. of Med.*, 688 F. Supp. 2d 586, 591 (S.D. Tex. 2010); *Sleepys LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 199–200 (2d Cir. 2015); *Cox v. Nasche*, 70 F.3d 1030, 1031, n.2 (9th Cir. 1995); Restatement (Second) of Torts § 583 (Am. Law Inst. 1977).

Brunette cites *Cox v. Hatch*, 761 P.2d 556 (Utah Sup.Ct. 1988) to argue that the defense of consent should be construed narrowly. This is not what the court in that case held. Rather, the court held that requiring the media or politicians to obtain consent to use a photo taken in a public place from all individuals in the photo is not "consistent with the First Amendment" and that any requirement of consent "in such a context is indeed narrow." *Cox*, 761 P.2d at 561, n.4. *Cox* is not applicable here, which obviously concerns a totally different context.

### 3. Brunette fails to allege intent and knowledge for Count Five

The facts alleged to support Count Five for intentional interference with economic relations are not actionable because Brunette fails to allege that Engemann intended to interfere with any supposed business relations or that she had knowledge of any such relations. In response, Brunette asserts that Engemann's alleged statements having the incidental effect of interfering with his supposed economic relations is enough to state a claim.

Brunette overlooks that an essential element of his claim is that Engemann "*intentionally interfered with [his] existing or potential economic relations.*" *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 18 (2008) (emphasis added). Engemann's conduct must have been "*designed to interrupt* what would otherwise have been of economic advantage to" Brunette. *Ecosure Pest Control, Inc. v. Eclipse Mktg.*, No. 2:09-CV-1108, 2010 U.S. Dist. LEXIS 86614, at *10 (D. Utah Aug. 19, 2010) (emphasis added). Here, Brunette alleges zero facts that Engemann intended to interfere with any specific alleged business opportunity. *See* Complaint, ¶¶ 125–127. Nor does he allege that Engemann's comments were designed to interrupt any alleged business opportunities. *See id.* Brunette does not even allege that Engemann had any knowledge of these supposed opportunities. *Id.* In his Opposition, Brunette identifies no allegations supporting intent or knowledge.

Knowledge of the alleged business relations is key for Brunette's claim. As explained by this District Court, interference is too speculative to support a claim under Utah law when the alleged interferer did not have "any knowledge or notice of [the] third party relationship" that was allegedly interfered with. *Bower v. Stein Eriksen Lodge Owners Ass'n*, 201 F. Supp. 2d 1134, 1143 (D. Utah 2002). There clearly must be specific knowledge as to the alleged economic relationship. Because Brunette fails to allege any knowledge by Engemann, his claim must fail.

Brunette takes issue with Engemann's citation of the Utah Supreme Court in *Searle v. Johnson*, 646 P.2d 682 (Utah Sup.Ct. 1982), which found that there must be knowledge of the alleged business relations for an intentional interference claim. *Searle*, 646 P.2d at 683. But Brunette fails to demonstrate how *Searle* is bad law or that its explanation of the elements of intentional interference with economic relations is wrong. Brunette also criticizes *Searle* for citing a law review article, but it also cites the Restatement 2d of Torts, § 766(B) and *Gammon v. Federated Milk Producers Ass'n*, 14 Utah 2d 291 (1963). *Searle*, 646 P.2d at 683, n.1.

## B.     Brunette's claims are barred by the relevant release

The Performer Agreement, which Brunette does not dispute is valid and bears his signature, is a waiver and release of all claims brought against Engemann. *See Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 ("a valid release constitutes a complete

bar to an action on a claim which is the subject of the release"); *Moore v. Cohen,* 548 F. Supp. 3d 330, 338–344 (S.D.N.Y. 2021). Brunette's arguments against the broad waiver and release in the agreement do not refute this.

The Performer Agreement is properly raised under the Anti-SLAPP Act. The Performer Agreement shows that Brunette cannot establish a *prima facie* case as to his claims. *See* Utah Code § 78B-25-107(1)(c)(i). The agreement also shows that "there is no genuine issue as to any material fact and [Engemann] is entitled to judgment as a matter of law" on all claims against her. *See* Utah Code § 78B-25-107(1)(c)(ii)(B). In either instance, Brunette's claims should be dismissed.

That Engemann is not a signatory to the Performer Agreement does not defeat its effect as a valid release and waiver of the claims brought against her. Under New York law, a non-signatory may enforce a contract, including a release, if they are deemed an "intended beneficiary" of the agreement. *Comm'r of the Dep't of Soc. Servs. of the City of N.Y. v. N.Y.-Presbyt. Hosp.*, 164 A.D.3d 93, 98–99 (App. Div. 1st Dept. 2018). Here, there was a clear intent to benefit Engemann through a release and waiver of claims against her. Specifically, Engemann is one of the "Released Parties" in the Performer Agreement that is protected from claims by Brunette "relating to, in any way," *The Secret Lives of Mormon Wives*. ECF No. 31-7 (Exh. A § 8). Specifically, the "Released Parties" include, *inter alia*, "all participants" in the show, "all other persons and entities rendering services in connection with the Series or otherwise connected to the Series or [Brunette's] services," and "on-air talent." *Id.* As one of the stars of *The Secret Lives of Mormon Wives*, Engemann is indisputably a participant in the show, rendered her services as a star on the show, and is "on-air talent" on the show. Brunette does not dispute that Engemann falls under the definition of a released party under the agreement. Further, the section titled "ASSUMPTION OF RISKS" states that certain "embarrassing" or "otherwise unfavorable" information may be revealed by "other participants" in the show. *Id.* (Exh. A § 7(a)). This indisputably covers Engemann. Thus, the Performer Agreement on its face is designed and intended to protect Engemann from the very claims brought here, making her an intended beneficiary of the agreement.

Brunette argues that the assumption of risk provision of the Performer Agreement does not apply here because it covers "information," and "information" needs to be true. Brunette's cherry-

picked definition of "information" provides no help considering he has not provided any factual basis to challenge the veracity of any statements alleged in the Complaint. And nothing about the definitions from Merriam-Webster require that for something to be "information," it must be 100% true. Moreover, Brunette's contractual assumption of risk goes far beyond just embarrassing or unfavorable information. ECF No. 31-7 (Exh. A § 7(a)). Brunette also assumed the risk of "the actions of others displayed in the Series" and "accept[ed] any and all risks of participating in the Series." *Id.* And Brunette assumed all risks of appearing in *The Secret Lives of Mormon Wives* "regardless of whether they are detailed in" the Performer Agreement. *Id.*

Brunette cannot avoid that his claims arise from Engemann's alleged comments made on *The Secret Lives of Mormon Wives* or connected to the show. *See, e.g.,* Complaint, ¶¶ 63, 73, 75–100, 106, 117, 122. In fact, Brunette's allegations primarily rely on statements made on the show. *See id.* at ¶¶ 73, 75–100. Even the initial alleged accusation of sexual misconduct was in the context of Brunette claiming he was not invited to a Hulu event connected to *The Secret Lives of Mormon Wives*. *Id.* at ¶¶ 57–59. The Performer Agreement's release bars claims "including without limitation those directly or indirectly caused by, arising out of, resulting from, or relating to, in any way," *The Secret Lives of Mormon Wives*. ECF No. 31-7 (Exh. A § 8). Alleged statements made on or connected to the show clearly fall under this broad release.

New York law expressly allows a plaintiff to release and waive defamation-based claims through a valid contractual release. *See Krupnik v. NBC Universal, Inc.*, 964 N.Y.S.2d 60 (Sup. Ct. 2010) (Plaintiff "affirmatively released her defamation claim" through written contractual release); *Moore*, 548 F. Supp. 3d at 340–41 (Contractual release and waiver of defamation and other claims held valid under New York law and barred such claims brought in connection to plaintiff's appearance on a television show), aff'd *Moore v. Cohen*, 2022 U.S. App. LEXIS 18648 (2d Cir. July 7, 2022); *Shapiro v. NFGTV, Inc.*, 2018 U.S. Dist. LEXIS 22879, at *19–20 (S.D.N.Y. Feb. 8, 2018) (Relying on new York law to hold that broad release barred all claims related to the plaintiff's participation in a television show, including defamation and fraud); *WSP United States Corp. v. Marinello*, 2013 U.S. Dist. LEXIS 178419, at *20 (S.D.N.Y. Dec. 18, 2013) (Relying on new York law to hold that release barred defamation claim).

New York public policy clearly does not prohibit a written waiver and release of defamation claims when such claims are routinely held to be barred by releases. *See id.* Tellingly, Brunette cites no case law holding that claims arising from alleged defamation cannot be waived and released by written agreement.

C.   **Brunette fails to demonstrate that there is a *prima facie* case for each element of his claims**

Because the Anti-SLAPP Act applies, Brunette has the burden of establishing a *prima facie* case as to each essential element of his claims. *See* Utah Code § 78B-25-107(1)(c)(i). Meaning, Brunette "'must present some competent evidence on every element needed to make out [a] cause of action.'" *MacKey*, 2025 UT at ¶ 58. As explained in the Motion, this includes showing malice by Engemann. However, Brunette provides ***no evidence*** in support of his claims (nor did he state a need to conduct discovery to procure any evidence). Brunette has put all of his eggs into one basket, namely that the Anti-SLAPP Act does not apply here. As noted above, however, the Anti-SLAPP Act does apply in federal court. Brunette's failure to provide any evidence is done at his own risk. Without any competent evidence for his claims, Brunette's entire case against Engemann must be dismissed with prejudice under the Anti-SLAPP Act.

## CONCLUSION

Engemann respectfully requests that Brunette's Complaint be dismissed with prejudice pursuant to Utah Code sections 78B-25-101, *et seq.*, or, alternatively Fed. R. Civ. P. 12(b)(6), and the Court award Engemann her attorneys' fees and costs in an amount to be determined.

DATED March 31, 2026

/s/*Julianne P. Blanch*
Julianne P. Blanch
PARSONS BEHLE & LATIMER

Attorneys for Defendant DEMI
ENGEMANN and JEFF JENKINS
PRODUCTIONS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March 2026 I filed the foregoing DEFENDANT DEMI ENGEMANN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO UTAH'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT OR, ALTERNATIVELY, FED. R. CIV. P. 12(b)(6), using the Court's ECF filing system which in turn served all counsel of record.

/s/*Michelle Orton-Brown*
Legal Asst, Parsons Behle & Latimer

4915-2106-6397.v1

11