David C. Reymann (8495) (dreymann@parrbrown.com)
Sean Sigillito (20101) (ssigillito@parrbrown.com)
Carissa Uresk (18114) (curesk@parrbrown.com)
**Parr Brown Gee & Loveless, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840

Cameron Stracher (*pro hac vice*) (cam@stracherlaw.com)
Sara Tesoriero (*pro hac vice*) (sara@stracherlaw.com)
**Cameron Stracher, PLLC**
1133 Broadway, Suite 516
New York, NY 10010
Telephone: (646) 992-3850

Attorneys for Defendant Jeff Jenkins Productions LLC

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARCIANO BRUNETTE,<br><br>Plaintiff,<br><br>v.<br><br>DEMI ENGEMANN and JEFF JENKINS PRODUCTIONS LLC,<br><br>Defendants. | **DEFENDANT JEFF JENKINS PRODUCTION LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56, MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c), AND MOTION FOR FEES UNDER UTAH CODE § 78B-25-102**<br><br>Case No. 2:25-CV-01102-TC-DAO<br><br>Judge Tena Campbell<br><br>Magistrate Judge Daphne A. Oberg |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

RESPONSE TO STATEMENT OF ADDITIONAL MATERIAL FACTS..................................... 2

ARGUMENT .................................................................................................................... 10

I.     PLAINTIFF'S CLAIMS ARE BARRED BY THE RELEASES HE SIGNED ............... 10

     A.    The Agreement Bars Plaintiff's Claims. ..................................................... 10

     B.    The Participant Release Bars Plaintiff's Claims. ....................................... 13

II.     PLAINTIFF'S CLAIMS FAILS AS A MATTER OF LAW. ........................................... 21

     A.    When Properly Viewed In the Context Of The Series, The Statements Plaintiff

     Raises Do Not Convey A Defamatory Meaning. ................................................ 21

     B.    Plaintiff Has Failed To Plead Actual Malice. ............................................. 24

     C.    Plaintiff's False Light Claim Is Duplicative And Should Be Dismissed. ................. 26

III.     UPEPA'S FEES PROVISION APPLIES TO THIS CASE........................................... 26

     A.    UPEPA's Fees Provision Is Substantive And Applies In This Diversity Action. ....... 26

     B.    Plaintiff's Claims Implicate JJP's Speech On A Matter Of Public Concern............ 29

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*1-800-Contacts, Inc. v. Weigner*,
127 P.3d 1241 (Utah Ct. App. 2005)...................................................................................... 14

*Abbas v. Foreign Pol'y Grp., LLC*,
783 F.3d 1328 (D.C. Cir. 2015) ............................................................................................ 28

*Adelson v. Harris*,
774 F.3d 803 (2d Cir. 2014), 402 P.3d 665 (2017) .............................................................. 28

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975) .............................................................................................................. 26

*Bihag v. A&E Television Networks, LLC*,
669 F. App'x 17 (2d Cir. 2016)............................................................................................. 11

*Billy v. Edge Homes*,
No. 2:19-CV-00058-JNP-EJF, 2020 WL 2572522 (D. Utah May 21, 2020) ....................... 24

*Bonnell v. Lorenzo*,
241 F.3d 800 (6th Cir. 2001).................................................................................................. 29

*Brandywine Pavers, LLC v. Bombard*,
108 A.D.3d 1209 (N.Y. App. Div. 4th Dept. 2013) .............................................................. 17

*Carroll v. Trump*,
680 F. Supp. 3d 491 (S.D.N.Y. 2023) .............................................................................. 11, 12

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*,
17 N.Y. 3d 269 (N.Y. 2011) .............................................................................................. 10, 11

*Christian v. Christian*,
365 N.E.2d 849 (N.Y. 1977)................................................................................................... 19

*Clinton v. Sec. Benefit Life Ins. Co.*,
63 F.4th 1264 (10th Cir. 2023)............................................................................................... 24

*Cook v. Dava Mktg., LLC*,
No. 2:23-CV-00632-DBB-DBP, 2025 WL 1684438 (D. Utah June 16, 2025) ....................... 24

*Cox v. Hatch*,
761 P.2d 556 (Utah 1988) ........................................................................................... 21

*Cox v. Nasche*,
70 F.3d 1030 (9th Cir. 1995) ..................................................................................... 12

*Dabriel, Inc. v. First Paradise Theaters Corp.*,
99 A.D.3d 517 (N.Y. App. Div. 1st Dept. 2012) ................................................... 19, 20

*David v. City & Cnty. of Denver*,
101 F.3d 1344 (10th Cir. 1996) .................................................................................. 29

*Davidson v. Baird*,
2019 UT App 8, 438 P.3d 928 ................................................................................... 24

*Eder v. Northern Arizona Consol. Fire Dist. #1*
No. CV-19-08101, 2020 WL 1307964 (D. Ariz. Mar. 19, 2020) ................................. 1

*Easton v. Wycoff*,
295 P.2d 332 (Utah 1956) .......................................................................................... 14

*Fernandez v. Clean House, LLC*,
883 F.3d 1296 (10th Cir. 2018) .................................................................................. 24

*Finman v. ClearCellular, Inc.*,
No. 2:22-CV-00272-JNP-JCB, 2023 WL 2742720 (D. Utah Mar. 31, 2023) ........... 24

*Flynn v. McGraw Hill LLC*,
120 F.4th 1157 (2d Cir. 2024) ................................................................................... 11

*Gillman v. Chase*,
534 N.E.2d 824 (N.Y. 1988), 534 N.E.2d at 828 ................................................. 18, 19

*Gopher Media LLC v. Melone*,
154 F.4th 696 (9th Cir. 2025) .................................................................................... 28

*Gottlieb v. Gottlieb*,
138 A.D.3d 30 (N.Y. App. Div. 1st Dept. 2016) ........................................................ 20

*Green v. 119 West 138th Street, LLC*,
142 A.D.3d 805 (N.Y. App. Div. 1st Dept. 2016) ...................................................... 20

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) ................................................................................................ 25

*Hirschfeld v. Institutional Investor, Inc.*,
260 A.D.2d 171 (N.Y. App. Div. 1999) .................................................................. 12

*Hogan v. Winder*,
762 F.3d 1096 (10th Cir. 2014)............................................................................... 21

*Huggins v. Moore*,
94 N.Y.2d 296 (1999) ............................................................................................. 29

*In re Clinton Street Food Corp.*,
254 B.R. 523 (S.D.N.Y. 2000).................................................................................. 15

*In re Conifer Realty LLC*,
106 A.D.3d 1251 (N.Y. App. Div. 3d Dept. 2013)................................................... 20

*In re Lehman Brothers Inc.*,
478 B.R. 570 (S.D.N.Y. 2012), 761 F.3d 303 (2d Cir. 2014) ............................. 17, 18

*Jerry's Gen. Contracting Serv., Inc. v. Republic of Philippines*,
No. 86 CIV. 3266 (PKL), 1987 WL 16369 (S.D.N.Y. Aug. 21, 1987) ...................... 17

*Keisel v. Westbrook*,
2023 UT App 163, 542 P.3d 536 ......................................................................... 23, 26

*Klapper v. Graziano*,
129 A.D.3d 674 (N.Y. App. Div. 2d Dept. 2015), 970 N.Y.S.2d at 408 ........................ 10, 11, 13

*Krupnik v. NBC Universal, Inc.*,
No. 103249/10, 2010 WL 9013658 (N.Y. Sup. Ct. Jun. 29, 2010).......................... 11

*Lackey v. Stinnie*,
604 U.S. 192 (2025) ................................................................................................ 26

*Lawrence v. NYC Med. Prac., P.C.*,
No. 1:18-cv-8649, 2023 WL 4706126 (S.D.N.Y. Jul. 21, 2023) ......................... 19, 20

*Lichfield v. Kubler*,
No. 2:24-CV-00458-JNP-CMR, 2025 WL 2772468 (D. Utah Sept. 29, 2025).................... 23, 26

*Mackey v. Krause*,
  2025 UT 37, 575 P.3d 1162 ...................................................................................... 27, 28

*Mandel v. Liebman*,
  100 N.E.2d 149 (N.Y. 1951) ............................................................................................ 18

*Manolis v. Brecher*,
  No. 11 CIV. 2750 RMB, 2014 WL 642849 (S.D.N.Y. Feb. 14, 2014) ...................................... 16

*Marciano v. DCH Auto Grp.*,
  14 F. Supp. 3d 322 (S.D.N.Y. 2014) ................................................................................. 17

*Martino v. Kaschak*,
  208 A.D.2d 698 (N.Y. App. Div. 2d Dept. 1994)................................................................ 18

*Mayaguez S.A. v. Citigroup, Inc.*,
  No. 16-Civ-6788, 2018 WL 1587597 (S.D.N.Y. Mar. 28, 2018) ............................................ 19

*Mayall v. The Randall Firm, PLLC*,
  No. 1:13-cv-00166, 2017 WL 3432033 (D. Utah Aug. 9, 2017)................................................. 1

*McCann v. Ship Wrecked Bar & Grill, Inc.*,
  239 A.D.3d 445 (N.Y. App. Div. 1st Dept. 2025)................................................................ 20

*Moore v. Cohen*,
  548 F. Supp. 3d 330 (S.D.N.Y. 2021) ................................................................................ 11

*Morby v. Di Siena Assocs., LPA*,
  291 A.D.2d 604 (N.Y. App. Div. 3rd Dept. 2002) .......................................................... 17, 18

*Myskina v. Conde Nast Publ'ns, Inc.*,
  386 F. Supp. 2d 409 (S.D.N.Y. 2005), ............................................................................... 16

*Nalezenec v. Blue Cross of Western New York*,
  172 A.D.2d 1004 (N.Y. App. Div. 4th Dept. 1991) ............................................................ 20

*Nunes v. Rushton*,
  299 F. Supp. 3d 1216 (D. Utah 2018)................................................................................. 25

*O'Connor v. Burningham*,
  2007 UT 58, 165 P.3d 1214 ............................................................................................. 21

*O'Hara v. Hall*,
  628 P.2d 1289 (Utah 1981) ................................................................................. 14

*Omni Quartz, Ltd. v. CVS Corp.*,
  287 F.3d 61 (2d Cir. 2002)................................................................................. 16

*Paskenta Bank of Nomlaki Indians v. Crosby*,
  No. 2:15-cv-00538, 2016 WL 6094468 (E.D. Cal. Oct. 19, 2016) ............................................ 1

*Paucek v. Shaulis*,
  349 F.R.D. 498 (D.N.J. 2025)........................................................................ 26, 27, 28

*Phelps v. Wichita Eagle-Beacon*,
  886 F.2d 1262 (10th Cir. 1989)........................................................................... 24

*Psenicska v. Twentieth Century Fox Film Corp.*,
07 CIV. 10972(LAP), 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008)........................................... 11

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) ............................................................................. 19

*Reeves v. Associated Newspapers, Ltd.*,
  232 A.D.3d 10, (2024) ................................................................................... 29

*Revell v. Hoffman*,
  309 F.3d 1228 (10th Cir. 2002)........................................................................... 25

*Rivera v. Peri & Sons Farms, Inc.*,
  735 F.3d 892 (9th Cir. 2013).............................................................................. 24

*SanMiguel v. Grimaldi*,
  No. 67, 2025 WL 2955744 (N.Y. Oct. 21, 2025)............................................................ 12

*SCO Grp., Inc. v. Novell, Inc.*,
  377 F. Supp. 2d 1145 (D. Utah 2005)...................................................................... 24

*Scottsdale Ins. Co. v. Tolliver*,
  636 F.3d 1273 (10th Cir. 2011)........................................................................... 26

*Shapiro v. NFGTV, Inc.*,
  No. 16 CIV 9152 (PGG), 2018 WL 2127806 (S.D.N.Y. Feb. 9, 2018) .................................. 11

*Shanley v. Hutcings*
  No. 16 CIV. 9152 (PGG), 2018 WL 2127806 (S.D.N.Y. Feb. 9, 2018) ................................... 29

*Shklovskiy v. Khan*,
  273 A.D.2d 371) (N.Y. App. Div. 2d Dept. 2000) ...................................................... 11

*Shoemaker v. Discovery Communic'ns, LLC*,
  No. 101802/2016, 2017 WL 4203458 (N.Y. Sup. Ct. May 22, 2017) ................................... 11

*Shrader v. Biddinger*,
  633 F.3d 1235 (10th Cir. 2011) ................................................................................ 25

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
  779 F.3d 191 (2d Cir. 2015) .................................................................................... 12

*Spinelli v. National Football League*,
  903 F.3d 185 (2d Cir. 2018) .................................................................................... 19

*Superior Officers Council Health & Welfare Fund v. Empire HealthChoice Assurance, Inc.*,
  85 A.D.3d 680 (N.Y. App. Div. 1st Dept. 2011) ........................................................... 18

*Talley v. Time, Inc.*,
  923 F.3d 878 (10th Cir. 2019) ................................................................................. 25

*Tarantola v. Williams*,
  48 A.D.2d 552 (N.Y. App. Div. 2d Dept. 1975) ...................................................... 15, 16

*Teichner v. Bellan*,
  7 A.D.2d 247 (N.Y. App. Div. 4th Dept. 1959) ........................................................... 12

*Terry v. Bacon*,
  269 P.3d 188 (Utah Ct. App. 2011) ........................................................................... 14

*Todd v. Lovecruft*,
  No. 19-CV-01751, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ...................................... 29, 30

*United States ex rel. Polukoff v. St. Mark's Hosp.*,
  895 F.3d 730 (10th Cir. 2018) ................................................................................. 24

*Watson v. NY Doe 1*,
  No. 19-CV-533, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) .................................. 29

*Weil v. Johnson*,
 No. 119431/02, 2002 WL 31972157 (N.Y. Sup. Ct. Sept. 27, 2002) ....................................... 12

*Werther v. Werther*,
 9 Misc. 3d 1114(A), 2005 WL 2384722 (N.Y. Sup. Ct. 2005) .................................................. 19

*West v. Thomson Newspapers*,
 872 P.2d 999 (Utah 1994) ................................................................................................... 21, 22

*Wilcox v. Career Step*,
 No. 2:08-CV-998-CW, 2010 WL 624863 (D. Utah Feb. 19, 2010).................................... 22, 23

*Wilson-Gray v. Jay Feinberg Ltd.*,
 No. 90 CIV. 0001 (MBM), 1990 WL 209635 (S.D.N.Y. Dec. 17, 1990) ................................. 16

*Woodward v. City of Worland*,
 977 F.2d 1392 (10th Cir. 1992)................................................................................................. 29

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
 450 F.3d 1132 (10th Cir. 2006).................................................................................................. 24

**Statutes**

Utah Code § 78B-25-102 ...................................................................................................... 27
Utah Code § 78B-25-107 ...................................................................................................... 27
Utah Code § 78B-25-110 ...................................................................................................... 27
Utah Code § 78B-25-115 ...................................................................................................... 28

**Rules**

Fed. R. Civ. P. 12................................................................................................................. 1, 27
Fed. R. Civ. P. 56...........................................................................................................*passim*
DUCivR 7-1(b)(3).........................................................................................................*passim*
DUCivR 56-1(d) ...................................................................................................................... 2

**Other Authorities**

Restatement (Second) of Torts § 583 ......................................................................................... 12

Defendant Jeff Jenkins Production LLC ("Defendant" or "JJP") submits this Reply in further support of its Motion for Summary Judgment or, in the alternative, Motion for Judgment on the Pleadings ("Mot." or "Motion").

## INTRODUCTION

In his opposition to JJP's Motion, Plaintiff acknowledges that he signed two releases that would bar his claims here. Nevertheless, he argues that JJP's Motion should be denied because the releases are either void as a matter of public policy or unenforceable, even though he assumed the risk of participating in the Series and consented to the very conduct that he now complains of, and despite clear precedent to the contrary. He also selectively picks lines from the Series that he claims could convey a defamatory meaning and argues that this creates a factual issue that cannot be resolved on a 12(c) motion, despite acknowledging that it is the proper role of the Court to construe the Series as a whole to determine whether it is defamatory, and he relies on cases that do not involve actual malice to argue that he has plausibly pleaded actual malice.[1] Finally, he ignores the substantive elements of UPEPA's fee provision to argue that it does not apply in federal court, which is wrong as a matter of law. For all these reasons,

---

[1] Plaintiff also contends that JJP's Rule 12(c) motion is premature because Engemann has moved to dismiss rather than file an answer. Opp. 10. However, where, as here, it "makes little sense" to wait for all parties to file an answer before considering a Rule 12(c) motion, courts have exercised their discretion to allow a 12(c) motion. *Paskenta Bank of Nomlaki Indians v. Crosby*, No. 2:15-cv-00538, 2016 WL 6094468, at *3 (E.D. Cal. Oct. 19, 2016) (collecting cases); *see also Eder v. Northern Arizona Consol. Fire Dist. #1*, No. CV-19-08101, 2020 WL 1307964, at *2 (D. Ariz. Mar. 19, 2020) (exercising discretion to consider defendant's Rule 12(c) motion "notwithstanding another defendant's pending Rule 12(b)(6) motion"). Moreover, "if a Rule 12(c) motion is filed before the pleadings are closed, a court may treat it as a motion to dismiss under Rule 12(b)(6)." *Mayall v. The Randall Firm, PLLC*, No. 1:13-cv-00166, 2017 WL 3432033, at *3 (D. Utah Aug. 9, 2017) (collecting cases).

set forth more fully below and in JJP's opening memorandum of law, Plaintiff's Complaint should be dismissed and JJP should be awarded its costs and attorneys' fees.

**RESPONSE TO STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to DUCivR 56-1(d), JJP provides the following response to Plaintiff's Statement of Additional Material Facts.

1.      At no point did Marciano Brunette sexually assault Demi Engemann. They exchanged a consensual kiss, and he is not a sexual predator. He has never engaged in any sort of violent conduct with her. *See* Pl.'s App'x, Ex. 1 ¶ 4.

**RESPONSE:**  JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment.  Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

2.      Engemann made false statements publicly on several occasions that Brunette sexually assaulted her and was a sexual predator. *See* JJP App'x, Ex. D (Season 3, Ep. 6) 00:12:11–00:13:10; Ex. F (Season 3, Ep. 8) 00:26:49–00:27:11; Ex. G (Season 3, Ep. 9) 00: 17:29–00:17:36; Ex. H (Season 3, Ep. 10) 00:36:37; Ex. I (Season 3, Reunion Ep.) 00:22:22, 00:32:09, 00:37:12.

**RESPONSE:**  JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment.  Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

2

3.       Several individuals who saw Engemann interact with Brunette, or spoke with Engemann shortly after their interaction, or knew Brunette, made clear to JJP that Engemann's accusations were false. *See, e.g.*, JJP App'x, Ex. D (Season 3, Ep. 6) 00:12:00–00:12:15, 00:25:30–00:25:42; Ex. G (Season 3, Ep. 9) 00:05:30–00:06:32; Ex. H (Season 3, Ep. 10) 00:39:14–00:39:22.

**RESPONSE:** JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment. Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

4.       JJP had observed Engemann previously falsely claim that she had been "shoved" by another man when video footage that JJP possessed plainly showed that accusation was false. *See* JJP App'x, Ex. D (Season 3, Ep. 6) 00:11:39–00:12:04.

**RESPONSE:** JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment. Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

5.       JJP had previously encouraged Engemann along with the other cast members to come up with ideas to make *Mormon Wives* less boring, and Engemann had previously suggested that JJP portray her relationship with another male castmate in a false light to gain ratings. *See* Pl.'s App'x, Ex. 6 (November 24, 2025 Instagram Post).

3

**RESPONSE:** JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment. Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

6.     JJP did not ask Plaintiff whether Engemann's allegations were true. Had JJP asked, Plaintiff could have provided JJP with evidence that contradicted Engemann's lies even further and would have denied her false accusations. Pl.'s App'x, Ex. 1 ¶ 5.

**RESPONSE:** JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment. Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

7.     Instead, JJP published Engemann's false accusations over the course of its show and published Engemann shaming individuals who expressed skepticism. *See* JJP App'x, Ex. D (Season 3, Ep. 6) 00:12:11–00:13:10; Ex. F (Season 3, Ep. 8) 00:26:49–00:27:11; Ex. G (Season 3, Ep. 9) 00: 17:29–00:17:36; Ex. H (Season 3, Ep. 10) 00:36:37; Ex. I (Season 3, Reunion Ep.) 00:22:22, 00:32:09, 00:37:12. JJP did not publish the truth: that Brunette did not sexually assault Engemann and denied her false accusations.

**RESPONSE:** JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment. Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's

4

claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

8.  Brunette and Engemann were both wearing microphones when they interacted, she said "I love you," and they kissed. Pl.'s App'x, Ex. 1 ¶ 6. The executive producer of *Vanderpump Villa* publicly stated that she had all of the video and audio footage from Engemann's time on the show and there was reason to doubt Engemann. Pl.'s App'x, Ex. 6 (November 25, 2025 *Us Weekly* Article).

**RESPONSE:** JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment. Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

9.  JJP nonetheless has continued to publish Engemann's false statements. *See* JJP App'x, Ex. I (Season 3, Reunion Ep.) 00:22:22, 00:32:09, 00:37:12.

**RESPONSE:** JJP objects to this statement because it is not material or relevant to the determination of JJP's motion for summary judgment. Fed. R. Civ. P 56; DUCivR 7-1(b)(3). Specifically, JJP's motion for summary judgment only concerns the issue of whether Plaintiff's claims are barred by the releases he signed, and resolution of that issue does not require a determination of the merits of Plaintiff's claims.

11.  In January 2026, Brunette traveled to Salt Lake City, Utah to visit Chase McWhorter, one of the castmates of Mormon Wives and one of Brunette's friends. Pl.'s App'x, Ex. 1 ¶¶ 7–8.

5

**RESPONSE:** Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 11 and therefore denies them.

12. While on the way to visit Mr. McWhorter, Mr. McWhorter raised the issue of whether Brunette would be willing to appear on film with him. *Id.* ¶ 8. Brunette ultimately agreed with Mr. McWhorter that they could be filmed at a nearby bar in Utah. Brunette did not discuss the arrangement with JJP prior to being filmed, and JJP did not discuss a contract. *Id.* ¶ 9.

**RESPONSE:** Defendant lacks sufficient knowledge to form a belief as to the truth of the statements in Paragraph 12 and therefore denies them.

13. On January 23, 2026, JJP filmed Brunette and Mr. McWhorter for approximately an hour at a bar in Park City, Utah. Brunette did not sign anything or agree to anything prior to filming, and no one from JJP relayed to Brunette how the footage would be used. *Id.* ¶¶ 10–11.

**RESPONSE:** JJP denies that no one from JJP relayed to Brunette how footage of him would be used because the Participant Release outlines ways in which JJP may use such footage. Declaration of Julie Hunt, dated February 16, 2026 ("Hunt Decl.") Ex 2 (ECF 33-4).

14. After JJP was done filming, a female representative of JJP approached Brunette and told him that he needed to sign a release. She did not present him with a document. Brunette questioned whether he actually needed to sign it because he had signed those types of documents for JJP previously. Brunette also asked the JJP representative how he was going to be paid. Brunette's prior 2025 Performer Agreement laid out how much money JJP was supposed to pay him for show appearances. *Id.* ¶ 12.

**RESPONSE:** JJP admits that Brunette has signed documents similar to the Participant Release before and otherwise denies the statements in Paragraph 14 because he was presented

with the Participant Release and given the opportunity to review the document before signing it. Declaration of Julia Schrader, dated April 10, 2026 ("Schrader Decl.") ¶ 7; Hunt Decl. Ex. 2.

15.     The JJP representative, in response to Brunette's questions, told Brunette that he had to sign the release and that they had his bank account information. *Id.* ¶¶ 13–14. She made no mention that the release would address anything other than the filming that had just transpired. *Id.* The JJP representative then presented Brunette with a "QR code," which Brunette scanned using his phone. *Id.*

**RESPONSE:** JJP denies that its representative told Brunette that he "had to sign" the Participant Release. Schrader Decl. ¶ 7. JJP also denies that the JJP representative "made no mention" of what the Participant Release would address because the Participant Release specifically recites what it covers. Hunt. Decl. Ex. 2.

17.     Brunette did not think that the 2026 Document had anything to do with this lawsuit and did not intend to release any of his claims against JJP or Engemann. *Id.* ¶¶ 15–16.

**RESPONSE:** JJP denies the statements in Paragraph 17 because Brunette signed the Participant Release, which releases his claims against JJP. Hunt Decl. Ex. 2.

18.     JJP has not paid Brunette anything for the hour of filming in Utah or for purportedly settling the claims in this lawsuit. *Id.* ¶ 17.

**RESPONSE:** To the extent Paragraph 18 implies that Brunette did not receive any consideration in exchange for signing the Participant Release, JJP denies the statements in this Paragraph because Brunette received the "opportunity for publicity" under the Participant Release. Hunt Decl. Ex. 2.

19.     The 2026 Document makes no mention of this lawsuit and does not obligate Brunette to dismiss his claims against JJP. JJP App'x, Ex. A (Hunt Decl.), ex. 2. It is not signed by anyone other than Brunette. *Id.* It does not contain a provision requiring JJP to provide any consideration to Brunette in exchange for his agreement to the terms contained therein. Id.

**RESPONSE:** JJP denies the statements in Paragraph 19 because Brunette signed the Participant Release, which releases his claims against JJP, and as consideration he received the "opportunity for publicity" under the Participant Release. Hunt Decl. Ex. 2.

21.     The 2026 Document states that Plaintiff will not be paid consideration for either appearing on the Program or agreeing to anything in the 2026 Document. *Id.* at 2. The 2026 Document claims that "a significant element of the consideration I am receiving under this Release is the opportunity for publicity that I will receive if Producer includes my Participation in the Program." *Id.* Nothing in the 2026 Document obligates Producer to include footage of Plaintiff. *Id.*

**RESPONSE:** JJP denies the statements in Paragraph 21 because the Participant Release states that Brunette understood he would "not be paid" for his participation, and "a significant element of the consideration [he was] receiving under [the Participant Release] [was] the opportunity for publicity that [he] will receive if Producer includes [his] Participation in the Program." Hunt Decl. Ex. 2.

22.     Brunette's 2025 Performer Agreement already contained several provisions addressing JJP's ability to use Brunette's likeness, which would have provided the same "opportunity for publicity." JJP App'x, Ex. A (Hunt Decl.), ex. 1 ¶¶ 3, 5(b).

8

**RESPONSE:** JJP denies the statements in Paragraph 22 because the Participant Release provided Brunette with an additional "opportunity for publicity" beyond the opportunity provided by the Agreement.  Hunt Decl. Exs. 1 & 2.

23.     The 2026 Document purports to release all claims "which I or the Releasing Parties ever had, now has, or in the future may have against the Released Parties," and then provides examples of such released claims, all of which relate to the earlier defined "Program." JJP App'x, Ex. A (Hunt Decl.), ex. 2 at 3.

**RESPONSE:** JJP denies the statements in Paragraph 23 because the Participant Release states that Brunette released all claims he "ever had, now has, or in the future may have against the Released Parties, including, but not limited to claims arising out of or related to the Program . . . ." Hunt Decl. Ex. 2.

24.     The 2026 Document states that if the parties cannot resolve any dispute related to the Agreement with direct discussion, the parties will first resolve the issue through mediation, and then through arbitration. *Id.* at 5. JJP has not attempted to bring this case to a mediator or demand arbitration. Pl.'s App'x, Ex. 2 (Solano Decl.) ¶ 7.

**RESPONSE:** JJP objects to this statement because it is not material or relevant to the determination of JJP's Motion.  Fed. R. Civ. P 56; DUCivR 7-1(b)(3).

27.     JJP did not raise release as an affirmative defense in its Answer and did not counterclaim to enforce the 2026 Document as a contract. See Dkt. 32 (JJP's Answer).

**RESPONSE:** JJP denies that it has not raised release as an affirmative defense because it has filed a proposed Amended Answer raising that defense.  *See* Am. Ans. (ECF 66-1).

## **ARGUMENT**

### I.      **PLAINTIFF'S CLAIMS ARE BARRED BY THE RELEASES HE SIGNED.**

Plaintiff does not dispute that he signed two separate releases in connection with his participation in the Series – a "Performer Agreement" (the "Agreement") and a "Participant Release." Instead, he claims the former is void as against New York public policy, and the latter is unenforceable for a host of contract formation reasons. Plaintiff's contentions are without merit, and his Complaint should be dismissed because each of the releases separately bars his claims.

### A.      **The Agreement Bars Plaintiff's Claims.**

Plaintiff does not dispute that he signed an Agreement in which he clearly assumed the risk of participating in the Series and released all his claims against JJP LLC.[2] *See* Hunt Decl. Ex. 1, ex. A ¶¶ 7 & 8. Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y. 3d 269, 276 (N.Y. 2011) (citation omitted); *see also Klapper v. Graziano*, 129 A.D.3d 674, 675 (N.Y. App. Div. 2d Dept. 2015) ("Such releases, which are commonly used in the entertainment industry, are enforceable and should not lightly be set aside."). Moreover, "[a]lthough a defendant has the initial burden of establishing that it has been released from any claims, a signed release 'shifts the burden of going forward to the plaintiff to show that there has been fraud, duress or some other fact which will be sufficient to

---

[2] As Defendant Engemann has pointed out, the assumption of risk language in the Agreement is broad enough to encompass Plaintiff's claims here. *See* Engemann Reply Mot. 8–9 (ECF 58).

void the release.'"  *Centro Empresarial*, 17 N.Y. 3d at 276 (cleaned up and citation omitted); *see also Shklovskiy v. Khan*, 273 A.D.2d 371, 372) (N.Y. App. Div. 2d Dept. 2000) ("A release will not be treated lightly, and will be set aside by a court only for duress, illegality, fraud, or mutual mistake.").  "Whether an agreement is ambiguous is a question of law for the courts." *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1165 (2d Cir. 2024).

Here, Plaintiff claims the Agreement is void because "New York has a longstanding public policy that renders unenforceable contractual prohibitions purporting to limit liability for intentional or willful misconduct," like defamation.  Opp. 33–34.  Plaintiff's contention is meritless, and flies in the face of New York precedent.  Indeed, New York courts routinely enforce exculpatory clauses that release defamation and related claims.  *See Moore v. Cohen*, 548 F. Supp. 3d 330, 340–44 (S.D.N.Y. 2021) (release barred defamation claim brought by participant in faux television talk show), *aff'd*, No. 21-1702-CV, 2022 WL 2525722 (2d Cir. 2022); *Shapiro v. NFGTV, Inc.*, No. 16 CIV. 9152 (PGG), 2018 WL 2127806, at *1 (S.D.N.Y. Feb. 9, 2018) (release barred participant's defamation claim in unscripted television program); *Shoemaker v. Discovery Communic'ns, LLC*, No. 101802/2016, 2017 WL 4203458, at *3 (N.Y. Sup. Ct. May 22, 2017) (release barred defamation claim in reality television show); *Klapper*, 970 N.Y.S. 2d at 359–62 (release barred defamation claim in reality television show); *Krupnik v. NBC Universal, Inc.*, No. 103249/10, 2010 WL 9013658, at *7 (N.Y. Sup. Ct. Jun. 29, 2010) (release barred model's defamation claim arising from scene in movie); *Bihag v. A&E Television Networks, LLC*, 669 F. App'x 17, 18 (2d Cir. 2016) (release barred fraud and other claims brought by participant in unscripted television program); *Psenicska v. Twentieth Century Fox Film Corp.*, No. 07 CIV. 10972(LAP), 2008 WL 4185752, at *7 (S.D.N.Y. Sept. 3, 2008), *aff'd*, 409 F. App'x

11

368 (2d Cir. 2009) (release barred action for fraudulent inducement); *Weil v. Johnson*, No. 119431/02, 2002 WL 31972157, at *1 (N.Y. Sup. Ct. Sept. 27, 2002) (release barred injunctive relief for alleged invasion of privacy claim).

Moreover, consent is a valid defense to an intentional tort. *SanMiguel v. Grimaldi*, No. 67, 2025 WL 2955744, at *4 (N.Y. Oct. 21, 2025). Specifically, in the defamation context, the "consent of the person defamed to the making of a defamatory statement bars that person from suing for the defamation." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 199 (2d Cir. 2015); *see also Carroll v. Trump*, 680 F. Supp. 3d 491, 514 (S.D.N.Y. 2023) (under New York law consent is a bar to a defamation claim); *Hirschfeld v. Institutional Investor, Inc.*, 260 A.D.2d 171, 172 (N.Y. App. Div. 1999) (plaintiff's consent to alleged defamation communication barred her claim); *Teichner v. Bellan*, 7 A.D.2d 247, 251 (N.Y. App. Div. 4th Dept. 1959) ("Consent is a bar to a recovery for defamation under the general principle of *volenti non fit injuria* or, as it is sometimes put, the plaintiff's consent to the publication of the defamation confers an absolute immunity or an absolute privilege upon the defendant"); *see also Cox v. Nasche*, 70 F.3d 1030, 1031 (9th Cir. 1995) (signed release afforded absolute privilege that barred defamation action); Restatement (Second) of Torts § 583 ("the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation"). Here, by agreeing to the assumption of risk language and signing the Agreement, Plaintiff consented to being defamed.

Thus, Plaintiff's contention that New York's "public policy" forbids the release of defamation (and false light) claims like the ones Plaintiff has asserted here is simply without support and wrong.

12

### B.   The Participant Release Bars Plaintiff's Claims.

Even if New York public policy prohibited the use of exculpatory clauses to limit liability for defamation claims, which it does not, Plaintiff signed a Participant Release *after* the events at issue that bars his claims here.  Plaintiff does not dispute that he signed the Participant Release and does not dispute that, on its face, this release would bar his claims.  Instead, Plaintiff advances a kitchen sink of reasons why the Participant Release does not bar his claims.  Those arguments are meritless.

First, despite Plaintiff's insinuations to the contrary, no lawyer communicated – directly or indirectly – with Plaintiff.  *See* Schrader Decl. ¶ 8.  Rather, Plaintiff voluntarily signed the Participant Release after participating in filming in Park City.  *Id.* ¶ 7.  Thus, Plaintiff's contention that the Participant Release he signed is void because it was communicated to him without his counsel's knowledge or permission in violation of the ethical rules is meritless.  *See* Opp. 36–38.

Second, there was adequate consideration for the Participant Release.  Plaintiff acknowledges that he received the opportunity for publicity by participating in the Series.  Opp. 40.  This is adequate consideration.  *See Klapper*, 970 N.Y.S.2d at 408 (holding that plaintiff "bargained for the chance for publicity with the possibility that the outcome may not be as he expected").  Plaintiff himself has acknowledged the value of such consideration by pleading that his damages from Defendants' alleged actions include "lost opportunities to work on other projects, including at least one reality dating show."  Compl. ¶ 142.  Moreover, even if the consideration was not adequate, which it was, the Participant Release clearly states that "Producer has been induced to proceed with the production, distribution and exploitation of the

13

Program in reliance upon this Release" and "Producer will incur significant costs and expenses in reliance upon this Release, so I will not attempt to cancel it or to revoke any of the rights granted to Producer herein." Hunt Decl. Ex. 2. Reliance by a promisee, "induced by the conduct of the promisor, is accepted as a substitute for formal consideration." *Easton v. Wycoff*, 295 P.2d 332, 333 (Utah 1956).

Moreover, this is not a case where the parties dispute whether a contract actually existed, unlike the cases cited by Plaintiff. *See O'Hara v. Hall*, 628 P.2d 1289 (Utah 1981) (written construction estimate was not a binding contract); *Terry v. Bacon*, 269 P.3d 188 (Utah Ct. App. 2011) (oral settlement agreement was not a binding contract); *1-800-Contacts, Inc. v. Weigner*, 127 P.3d 1241 (Utah Ct. App. 2005) (email was not a binding contract). Thus, Plaintiff's contention that there was no "meeting of the minds" is misplaced. Opp. 40–41. The Participant Release is five pages long, and could not be clearer that Plaintiff voluntarily agreed to participate in the filming of the Series in exchange for the opportunity for publicity, that filming would occur "on such dates and such locations as Producer shall designate," and that the Participant Release contained the parties "entire understanding relating to the subject matter contained therein and supercedes any prior or contemporaneous agreements, discussions, and negotiations, and cannot be changed, modified or terminated except by an agreement signed by both parties." Hunt Decl. Ex. 2.

Third, despite Plaintiff's contention otherwise, Opp. 42–44, the scope of the Participant Release clearly covers Plaintiff's claims here. The Participant Release recites that Plaintiff agrees "to voluntarily participate in the production of the Program and engage in all activities associated with my participation in the Program." Hunt Decl. Ex. 2. It provides that "All my

14

contributions to such recordings and the results and proceeds of any recordings made by

Producer form part of my Participation and may be used and exploited as set forth herein, in any

manner, in all media, now known or hereafter devised, throughout the universe, in perpetuity."

*Id.* In signing the Participant Release Plaintiff represented and warranted that he "read and fully

understand the terms of this Release and I accept and agree to the terms herein and that no oral

representations, statements, or inducements, apart from those contained in this Release, have

been made to me." *Id.* And he fully assumed the risk of participating in the Series and agreed

that:

> To the maximum extent permitted by law, I AGREE THAT I WILL NEVER SUE PRODUCER, NETWORK OR ANYONE because I do not like the manner in which Producer or Network, and each of their licensees or assignees, used my Participation and/or the Materials in the Program . . . for any cause of action based on any of the Released Claims (as defined below). To the maximum extent permitted by law, I, for myself and on behalf of my heirs, executors, agents, successors, and assigns (collectively, "**Releasing Parties**"), hereby release, hold harmless, and forever discharge Producer, Network, and any station or network or exhibitor that exhibits the Program, and each of their respective parents, subsidiaries (whether or not wholly-owned), affiliates, and the agents, representatives, employees, successors, and assigns, jointly and individually (collectively, "**Released Parties**"), from any and all manner of liabilities, actions, injuries, claims, demands, costs (including attorney's fees and court costs), expenses, suits, judgments, interest, and any other damages of any kind or nature whatsoever, in law or equity, whether known or unknown (collectively, "**Claims**") which I or the Releasing Parties ever had, now has, or in the future may have against the Released Parties.

*Id.* This language is broad enough to release Plaintiff's claims here.

Fourth, the language of the Participant Release is also specific enough to apply to

Plaintiff's claims. *See* Opp. 44–45. In contrast to the cases cited by Plaintiff, this is not a

situation where Plaintiff signed a release for claims that were unknown at the time he signed it.

*See In re Clinton Street Food Corp.*, 254 B.R. 523, 534 (S.D.N.Y. 2000) (broadly drawn release

cannot be taken at face value if injuries were unknown at the time) (citation omitted).  Rather, Plaintiff had already filed this lawsuit at the time he released his defamation and false light claims pursuant to the explicit terms of the Participant Release.  Nor did Plaintiff sign a release for unrelated claims when he signed the Participant Release.  *See Tarantola v. Williams*, 48 A.D.2d 552, 554 (N.Y. App. Div. 2d Dept. 1975) (release did not apply to right to implead third parties where plaintiff released defendants in action for damages).  Here, Plaintiff knew he had filed a lawsuit for defamation and false light arising from his participation in the Series and knew that the Agreement he had previously signed contained a broad release provision.  Thus, he knew, or should have reasonably known, that the Participant Release contained a similar release.

Moreover, the parol evidence rule bars Plaintiff's contentions about what was said at the time he signed the Participant Release or how the parties may or may not have conducted themselves.  *See* Opp. 45 (claiming that "nothing that transpired between JJP and Brunette suggests that the release language in the 2026 Document settles this lawsuit").  In New York, "the parol evidence rule bars the admission of any prior or contemporaneous negotiations or agreements offered to contradict or modify the terms of a written agreement."  *Myskina v. Conde Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 415 (S.D.N.Y. 2005); *see also Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract"); *Manolis v. Brecher*, No. 11 CIV. 2750 RMB, 2014 WL 642849, at *4 (S.D.N.Y. Feb. 14, 2014), (parol evidence rule "precludes the plaintiff from introducing evidence of an alleged oral agreement, which allegedly contradicts and varies the terms of the parties' subsequent written contract" (alterations, quotation marks and citations omitted)) *aff'd*, 588 F. App'x 85 (2d Cir. 2015); *Wilson-Gray v. Jay Feinberg Ltd.*, No.

16

90 CIV. 0001 (MBM), 1990 WL 209635, at *2 (S.D.N.Y. Dec. 17, 1990) (same).  The parol evidence rule applies here because the Participant Release signed by Plaintiff:  (1) constitutes an integrated agreement; (2) is clear and unambiguous; and (3) contains an express bar to his claims.  *Myskina*, 386 F. Supp. 2d at 415.  Because the release is "clear and unambiguous on its face, extrinsic evidence of prior or contemporaneous negotiations is inadmissible to vary its meaning."  *Jerry's Gen. Contracting Serv., Inc. v. Republic of Philippines*, No. 86 CIV. 3266 (PKL), 1987 WL 16369, at *4 n. 3 (S.D.N.Y. Aug. 21, 1987) (quotation marks and citations omitted).  Thus, Plaintiff's contention about the parties' conduct is inadmissible in determining the applicability of the Participant Release to Plaintiff's claims here.[3]

In addition, Plaintiff's failure to read the Participant Release does not bar its applicability.  *See* Brunette Decl. ¶ 15 (alleging that Plaintiff "had no idea that the document I signed had anything to do with this lawsuit").  Under New York law, "'[a] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents.'"  *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (quoting *Brandywine Pavers, LLC v. Bombard*, 108 A.D.3d 1209, 1210 (N.Y. App. Div. 4th Dept. 2013)).  Moreover, Plaintiff may not properly avoid the effect of the Participant Release by claiming ignorance of the significance of its terms.  *See, e.g.*, *In re Lehman Brothers Inc.*, 478 B.R. 570, 587 n.19 (S.D.N.Y. 2012) (under New York law, "[a] party's failure to read or understand a contract that it signs does not relieve it

---

[3] Plaintiff's contention that JJP did not plead release as an affirmative defense is moot because JJP has requested leave to amend its answer to include the affirmative defense.  *See* Amend. Ans. ECF 66-1.

of its obligation to be bound by the contract"), *aff'd on other grounds*, 761 F.3d 303 (2d Cir. 2014); *Superior Officers Council Health & Welfare Fund v. Empire HealthChoice Assurance, Inc.*, 85 A.D.3d 680, 682 (N.Y. App. Div. 1st Dept. 2011) (parties "are presumed to know the contents of the agreements they have signed") (citation omitted), *aff'd*, 17 N.Y.3d 930 (2011); *Morby v. Di Siena Assocs., LPA*, 291 A.D.2d 604, 605–06 (N.Y. App. Div. 3rd Dept. 2002) (dismissing complaint where plaintiff failed to read "simple, straightforward" release that was only two pages long); *Martino v. Kaschak*, 208 A.D.2d 698, 698–99 (N.Y. App. Div. 2d Dept. 1994) (affirming dismissal of complaint where plaintiff claimed he did not read release because law office secretary told him it was a receipt).   Not only does the law not support Plaintiff's position, but as a seasoned reality television star who has previously signed appearance releases, Plaintiff should be well-versed in the standard terms.  *See* Compl. ¶ 8 ("Brunette starred in Seasons 1 and 2 of the hit reality television show *Vanderpump Villa*"); Hunt. Decl. Ex. 1 (Performer Agreement signed by Brunette with similar release terms).

Finally, the Participant Release is not unconscionable.  *See* Opp. 45–47.  "[A]n unconscionable contract is one 'such as no man in his senses and not under a delusion would make on the one hand, and as no honest or fair man would accept, on the other.'  The inequality 'must be so strong and manifest as to shock the conscience and confound the judgment of any man of common sense.'"  *Mandel v. Liebman*, 100 N.E.2d 149, 152 (N.Y. 1951) (cleaned up; citations omitted); *see also Gillman v. Chase*, 534 N.E.2d 824, 828 (N.Y. 1988) (an unconscionable contract is one which "'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms'") (citation omitted).  The burden of proving unconscionability is a heavy one.

18

*Werther v. Werther*, 9 Misc. 3d 1114(A), 2005 WL 2384722, at *5 (N.Y. Sup. Ct. 2005) (citing

*Christian v. Christian*, 365 N.E.2d 849, 854 (N.Y. 1977)).  Here, Plaintiff cannot sustain that

burden because he chose to freely participate in the filming of the Series and signed the

Participant Release after participating in earlier filming and signing the Agreement.

To establish unconscionability, a plaintiff must demonstrate that the contract at issue is

both procedurally and substantively unconscionable.  *Gillman*, 534 N.E.2d at 828; *see Spinelli v.*

*National Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (noting that a contract must be *both*

procedurally and substantively unconscionable to be unenforceable).  For procedural

unconscionability, Plaintiff must show a "lack of meaningful choice."  *Gillman*, 534 N.E.2d at

828.  The determination of unconscionability is a question of law for the court.  *Mayaguez S.A. v.*

*Citigroup, Inc.*, No. 16-Civ-6788, 2018 WL 1587597, at *12 (S.D.N.Y. Mar. 28, 2018) (citing

cases).

Here, it is no excuse that Plaintiff claims he did not read the Participant Release, or that it

was presented to him via a QR code.  Opp. 46.  He clearly knew what a release was and what it

was for, having already signed the Agreement.  Hunt Decl. Ex. 1.  Moreover, the Participant

Release is a mere five pages long, in large font, with Plaintiff's agreement that he "WILL

NEVER SUE PRODUCER, NETWORK OR ANYONE" in all capital letters. *Id.* Ex. 2; *see also*

*Lawrence v. NYC Med. Prac., P.C.*, No. 1:18-cv-8649, 2023 WL 4706126, at *9–10 (S.D.N.Y.

Jul. 21, 2023) ("[C]lear, all-caps language significantly militates against finding the agreements

to be procedurally unconscionable.").  No one held a gun to his head; no one forced him to sign

the Participant Release; indeed, no one forced him to participate at all.  *See Ragone v. Atl. Video*

*at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (agreement offered on a "take it or leave it"

19

basis, to a plaintiff who claimed she did not read the agreement and had no relevant experience or background in subject matter of agreement was not unconscionable); *Lawrence*, 2023 WL 4706126, at \*9–10 (arbitration agreement signed after commencement of litigation, that failed to mention specific litigation at issue, was not unconscionable); *Dabriel, Inc. v. First Paradise Theaters Corp.*, 99 A.D.3d 517, 521 (N.Y. App. Div. 1st Dept. 2012) (contract was not unconscionable where "plaintiffs were free to walk away from the lease negotiations at any time and rent space elsewhere") (citation omitted).  Under these circumstances, there can be no procedural unconscionability.

Nor is the Participant Release substantively unconscionable.  Examples of substantive unconscionability include "inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty." *In re Conifer Realty LLC*, 106 A.D.3d 1251, 1254 (N.Y. App. Div. 3d Dept. 2013) (citation and quotation marks omitted). Here, Plaintiff claims the Participant Release is substantively unconscionable because "he would receive nothing" for releasing his claims in this lawsuit.  Opp. 47.  But, as noted above, Plaintiff received the opportunity for publicity by participating in the Series.  Moreover, a contract is not unconscionable simply because, in hindsight, Plaintiff regrets his bargain.  *McCann v. Ship Wrecked Bar & Grill, Inc.*, 239 A.D.3d 445, 447 (N.Y. App. Div. 1st Dept. 2025); *see also Green v. 119 West 138th Street, LLC*, 142 A.D.3d 805, 813 (N.Y. App. Div. 1st Dept. 2016) (agreement was not substantively unconscionable where plaintiff received $5000 to quitclaim property valued at more than $1 million); *Gottlieb v. Gottlieb*, 138 A.D.3d 30, 59 (N.Y. App. Div. 1st Dept. 2016) (one-sided agreement leaving parties with substantial disparities of wealth was not substantively unconscionable); *Nalezenec v. Blue Cross of Western New York*, 172

20

A.D.2d 1004, 1005 (N.Y. App. Div. 4th Dept. 1991) (agreement that gave defendant exclusive authority to determine need for skilled nursing care was not substantively unconscionable).

## II.    PLAINTIFF'S CLAIMS FAILS AS A MATTER OF LAW.

### A.    When Properly Viewed In the Context Of The Series, The Statements Plaintiff Raises Do Not Convey A Defamatory Meaning.

Plaintiff's contention that his defamation claim survives a motion to dismiss because his cherry-picked lines from the Series *could* convey a defamatory meaning misapplies well-established law. *See* Opp. 11–16. As the Tenth Circuit has stated, "it is especially important that 'whether a statement is capable of sustaining a defamatory meaning is a question of law.'" *Hogan v. Winder*, 762 F.3d 1096, 1106 (10th Cir. 2014) (citing *West v. Thomson Newspapers*, 872 P.2d 999, 1008 (Utah 1994)). "Only if a court first determines that a publication might be considered defamatory by a reasonable person is there a fact issue for the trier of fact." *Id.* (citing *Cox v. Hatch*, 761 P.2d 556, 561 (Utah 1988)). Thus, whether the Series is susceptible to the defamatory meaning Plaintiff alleges is a matter of law for this Court to decide. *See O'Connor v. Burningham*, 2007 UT 58, ¶ 26, 165 P.3d 1214, 1222 ("the existence of defamatory content is a matter of law"); *Cox*, 761 P.2d at 561 ("If no defamatory meaning can reasonably be inferred by reasonable persons from the communication, the action must be dismissed for failure to state a claim.").

As Plaintiff admits, whether the Series conveys a defamatory meaning "is a matter of context." *Hogan*, 762 F.3d at 1106; *see also* Opp. 13. The court "must[] conduct a context-driven assessment of the alleged defamatory statement and reach an independent conclusion about the statement's susceptibility to a defamatory interpretation." *Hogan*, 762 F.3d at 1106 (citing *O'Connor*, 165 P.3d at 1222). Regarding JJP, the relevant inquiry is not, as Plaintiff

21

claims, whether statements charging someone with sexual misconduct are defamatory, Opp. 11, but rather whether a reasonable viewer would understand that the Series made such an allegation against Plaintiff. *See West*, 872 P.2d at 1009 ("A court simply cannot determine whether a statement is capable of sustaining a defamatory meaning by viewing individual words in isolation; rather, it must carefully examine the context in which the statement was made . . . ."). Plaintiff's Opposition fails to acknowledge any of the context raised in JJP's Motion or explain why a reasonable viewer would disregard the numerous statements by the other MomTok members that they do not believe Engemann, the texts and social media posts included in the Series that cast doubt on Engemann's claims, Brunette's own words, texts, and social media posts included in the Series that challenge Engemann's allegations, and the statements of Brunette's ex-girlfriend confronting Engemann. Mot. 6–17, 22–26. For all the reasons set forth in JJP's Motion, when the allegedly defamatory statements are properly viewed in the context of the Series, no reasonable viewer would believe that the Series endorsed Engemann's claims against Brunette or conveyed that Brunette assaulted Engemann. *Id.* Therefore, Plaintiff's defamation claim should be dismissed.

Brunette's defamation by implication claim fails for similar reasons. First, Plaintiff admits that by including comments from other MomTok members that Engemann's allegations are not like the abuse experienced by Neeley and Matthews, the Series conveyed that Engemann's alleged experience with Brunette was not like the sexual abuse experienced by Neeley and Matthews.[4] Opp. 13–14. Second, despite again acknowledging that a court must

---

[4] The Complaint only asserts a claim for defamation by implication based on the alleged implications that Brunette "violently sexually assaulted [Engemann]" or "seriously assaulted

22

examine the context of allegedly defamatory statements to determine if a defamatory implication exists, Plaintiff then asks the Court to disregard the context highlighted by JJP and simply accept his interpretation of the allegedly defamatory statements.  Opp. 14–16; *see also Lichfield v. Kubler*, No. 2:24-CV-00458-JNP-CMR, 2025 WL 2772468, at *6 (D. Utah Sept. 29, 2025) (in determining whether a statement conveys a defamatory implication "courts must examine the context in which the underlying statement was made").  However, the Court should review relevant statements in the context of the Series and determine whether they create the defamatory implications Plaintiff alleges.  *See Keisel v. Westbrook*, 2023 UT App 163, ¶ 47, 542 P.3d 536 ("For purposes of assessing [plaintiff's] defamation claim, we'll assess [defendant's] words as they were actually spoken, not how [plaintiff] presented them to us in his brief.").  For the reasons set forth in JJP's Motion, the context demonstrates that the Series does not convey the defamatory implications Plaintiff claims.  Mot. 26–28.  Finally, Plaintiff's Opposition does not identify a single case analogous to the facts here or that supports his theory of defamation by implication.  *See* Opp. 12–17.  For these reasons, and those set forth in JJP's opening Motion, Plaintiff's defamation by implication claim should be dismissed.

---

Engemann" and "manipulated Engemann."  Compl. ¶¶ 153–155. To the extent Brunette now asserts a defamation by implication claim based on the broader implication that Brunette "'merely' assaulted Engemann" his argument should be disregarded because it goes beyond the claims in the Complaint.  Opp. 13; *see also Wilcox v. Career Step*, No. 2:08-CV-998-CW, 2010 WL 624863, at *5 (D. Utah Feb. 19, 2010) (disregarding additional basis for unjust enrichment claim raised in response to motion to dismiss where that basis was not raised in the complaint).  Indeed, by arguing that his defamation by implication claim survived "even if the Series only reasonably conveyed that Brunette 'merely' assaulted Engemann," Plaintiff appears to abandon his claim that the Series implied he "violently sexually assaulted [Engemann]." Compare Opp. 13–14 *with* Compl. ¶¶ 151–157.

### B. Plaintiff Has Failed To Plead Actual Malice.

Plaintiff's assertion that actual malice may be alleged generally without pleading specific facts is not supported by any of the case law he cites; indeed, Plaintiff does not cite a single actual malice case in support of his pleading standard position.[5] *See* Opp. 18–19; *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (considering neither a defamation claim nor the actual malice standard); *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730 (10th Cir. 2018) (same); *Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018) (same); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892 (9th Cir. 2013) (same); *Cook v. Dava Mktg., LLC*, No. 2:23-CV-00632-DBB-DBP, 2025 WL 1684438 (D. Utah June 16, 2025) (same); *Billy v. Edge Homes*, No. 2:19-CV-00058-JNP-EJF, 2020 WL 2572522 (D. Utah May 21, 2020) (same); *SCO Grp., Inc. v. Novell, Inc.*, 377 F. Supp. 2d 1145 (D. Utah 2005) (same); *see also* *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1270 (10th Cir. 1989) (discussing pleading common law malice, not actual malice); *Finman v. ClearCellular, Inc.*, No. 2:22-CV-00272-JNP-JCB, 2023 WL 2742720, at *2 (D. Utah Mar. 31, 2023) (discussing pleading standard for fraud, not actual malice). Moreover, JJP does not argue that actual malice must be pleaded with Rule 9(b) specificity, merely that the Plaintiff may not rely on conclusory assertions and must plead

---

[5] The cases cited by Plaintiff regarding pleading malice are inapplicable because the actual malice standard is a First Amendment protection and distinct from "common-law" malice. *See World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1136 (10th Cir. 2006) ("[T]he First Amendment circumscribes liability for state defamation. Specifically, if the plaintiff is a public figure, he must demonstrate by a standard of clear and convincing evidence that the defamatory statement was made with 'actual malice.'") (internal citations omitted); *Davidson v. Baird*, 2019 UT App 8, ¶ 43, 438 P.3d 928, 941–42 (recognizing distinction between "actual malice" and common-law malice).

24

facts sufficient to establish actual malice in compliance with the plausibility pleading standard. Mot. 29–31.

Brunette's allegations here are insufficient to plead actual malice because they amount to nothing more than an alleged failure to investigate, which is not sufficient to establish reckless disregard. *Talley v. Time, Inc.*, 923 F.3d 878, 906 (10th Cir. 2019) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)). Plaintiff's Opposition merely reasserts that JJP should have investigated Engemann's claims further, Opp. 20, but does not offer any facts that demonstrate anyone at JJP "actually had a high degree of awareness" that Engemann's claims were false. *Revell v. Hoffman*, 309 F.3d 1228, 1233 (10th Cir. 2002).

Additionally, Plaintiff's assertion that JJP had access to "video evidence [that] showed what [Engemann] said was false" is purely speculative and should be disregarded. Opp. 20–22; *see also Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (the Court need only accept as true "plausible, non-conclusory, and non-speculative" facts). It is implausible (and untrue) that JJP would have access to all unpublished footage owned by another production company merely because the Series included some publicly available footage from *Vanderpump Villa*. Opp. 21. Plaintiff's assertion that it is "plausible that additional footage and recording were available to JJP" is insufficient to support Plaintiff's theory that a review of *all footage* captured at *Vanderpump Villa* would reveal that no camera captured the assault alleged by Engemann. *See* Opp. 20 ("comprehensive footage . . . would have confirmed or refuted the alleged assault"). For this reason, and all the reasons set forth in JJP's Motion, Plaintiff has failed to plead actual malice, and his claims should be dismissed.

### C.  Plaintiff's False Light Claim Is Duplicative And Should Be Dismissed.

Plaintiff does not dispute that the First Amendment protections that limit liability for defamation claims also apply to false light claims.  *Lichfield*, 2025 WL 2772468, at *8 (citing *Keisel*, 2023 UT App 163, ¶ 70).  Indeed, in the case relied on by Plaintiff, *see* Opp. 25, the court dismissed the false light came on those grounds.  *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1234–35 (D. Utah 2018).  Here, because Plaintiff's false light claim is based on the same facts as his defamation claim, his false light claim also fails as a matter of law.  *See* Mot. 35.

### III.    UPEPA'S FEES PROVISION APPLIES TO THIS CASE.

### A.  UPEPA's Fees Provision Is Substantive And Applies In This Diversity Action.

Plaintiff does not dispute that fee-shifting statutes are generally considered substantive under *Erie* and apply in diversity actions.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) ("[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed."), *superseded by statute on other grounds as stated in Lackey v. Stinnie*, 604 U.S. 192, 205 (2025); *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011) ("We have previously held that '[i]n diversity cases, attorney fees are a substantive matter controlled by state law.'") (citation omitted); *Paucek v. Shaulis*, 349 F.R.D. 498, 516 (D.N.J. 2025) ("Fee-shifting statutes are generally considered substantive under *Erie* because they are tied to the outcome of the litigation.").  Rather, Plaintiff argues that the UPEPA fee provision does not apply here because other aspects of UPEPA do not apply in federal court. Opp. 47–48.  Plaintiff is mistaken.

26

Applying UPEPA's fees provision if JJP succeeds on its Motion pursuant to Federal Rule of Civil Procedure 12(c) or 56 would not conflict with federal procedural rules.  Under UPEPA, a defendant is entitled to an award of "reasonable attorney fees, and reasonable litigation expenses related to the motion reasonable attorney fees," if the defendant successfully dismisses a cause of action against it implicating defendant's speech on a matter of public concern under one of three standards: (i) The plaintiff fails to establish a prima facie case as to each essential element of the cause of action; or (ii) The defendant establishes that the plaintiff failed to state a cause of action upon which relief can be granted; or (iii) The defendant establishes that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law on the cause of action. Utah Code §§ 78B-25-102, -107, -110.  If JJP's Motion under Federal Rule 12 or 56 is granted, it would mean that JJP satisfied the second or third standard because they require the same showing as the respective Federal Rules.

The district court's analysis in *Paucek v. Shaulis* is instructive here.  349 F.R.D. 498 (D.N.J. 2025).  In *Paucek*, the court similarly examined whether UPEPA—which had also been adopted by New Jersey—applied in federal court to entitle a defendant that successfully dismissed claims under Rules 12 or 56 to attorneys' fees.[6]  *Id.* at 513–19.  As in Utah, the New Jersey UPEPA mandates an award of reasonable attorneys' fees and litigation costs when "a defendant successfully dismisses any cause of action brought against him implicating his exercise of First Amendment rights on a matter of public concern," under one of the same three

---

[6] "The Uniform Law Commission, also known as the National Conference of Commissioners on Uniform State Laws, drafted UPEPA. As of May 2025, eleven states, including Utah, have adopted some form of the model act." *Mackey v. Krause*, 2025 UT 37, 575 P.3d 1162, 1171.

27

standards as the Utah UPEPA. *Id.* at 513–14 (citing N.J.S.A. §§ SA:53A-50(a)(1), (a)(3)(A)–(B), -58(1)). The court recognized that the second and third standards do not conflict with the Federal Rules because they do not require a plaintiff to make a different showing than what would be required under the Federal Rules. *Id.* at 514. Thus, "if a defendant files an ordinary Rule 12 or Rule 56 motion and prevails on that motion, he triggers UPEPA's mandate to shift fees and costs." *Id.*

Moreover, the court rejected plaintiff's argument that other portions of UPEPA that would not apply in federal court doomed the entire statute because the "all-or-nothing" approach ignored UPEPA's severability clause,[7] and the court was "aware of no authority requiring it to hold that UPEPA either applies in federal court as a whole or else it does not apply in federal court at all." *Id.* at 514–16; *see also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), *certified question answered*, 402 P.3d 665 (2017) (finding mandatory fee-shifting provision to be "unproblematic" while questioning discovery-limiting aspects of Nevada's anti-SLAPP statute in federal court). The same conclusion applies to JJP's Motion here; if JJP's Motion under Rule 12 or 56 is granted, JJP has met one of the UPEPA standards and should be awarded its fees.[8]

---

[7] Utah's UPEPA has a severability clause, which expressly states: "If any provision of this chapter or the chapter's application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of this chapter which can be given effect without the invalid provision or application, and to this end the provisions of this chapter are severable." Utah Code § 78B-25-115.

[8] The cases relied on by Plaintiff are inapposite. Opp. 47–48. Unlike in *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015), or Justice Bress's concurrence in *Gopher Media LLC v. Melone*, 154 F.4th 696, 717 (9th Cir. 2025), the Court does not need to "re-write" UPEPA for the fees provision to survive. *See Paucek*, 349 F.R.D. at 516 (distinguishing *Abbas* and similar cases because "the Court does not have to rewrite anything in UPEPA. UPEPA expressly offers two dismissal standards that are identical to Rules 12 and 56.").

28

### B. Plaintiff's Claims Implicate JJP's Speech On A Matter Of Public Concern.

Plaintiff's contention that the allegedly defamatory statements do not involve a matter of public concern is meritless. First, the cases Plaintiff relies on to assert that allegations of sexual harassment are not a matter of public concern are First Amendment retaliation cases brought by public employees, which apply a specific "public concern" analysis that is not applicable here. *See David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996) (defining speech on "matters of public concern" as "[s]peech that pertains to a public agency's discharging its governmental responsibilities") (quotation omitted); *Woodward v. City of Worland*, 977 F.2d 1392, 1403 (10th Cir. 1992) (same). Second, *Shanley v. Hutchings* is also distinguishable because that case involved one private figure making allegations about another, 716 F. Supp. 3d 1179, 1191–92 (D. Utah 2024), unlike here, where the allegedly defamatory statements involve a public figure and his very public dispute with Engemann. Finally, courts have routinely found that allegations of sexual misconduct are matters of public concern. *See* Mot. 36–37, 37 n. 9; *see also Watson v. NY Doe 1*, No. 19-CV-533, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) ("[C]ourts have found Facebook and LinkedIn posts accusing an individual of sexual assault to be communications concerning an issue of public interest.") (internal marks omitted); *Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 19, (2024), *leave to appeal dismissed*, No. 2025-254, 2025 WL 2664547 (Sept. 18, 2025) (finding that report on contentious divorce and child custody battle between CEO and his wife involving "allegations of domestic violence" was a matter of public interest); *Huggins v. Moore*, 94 N.Y.2d 296, 303 (1999) (absent clear abuse, "the courts will not second-guess editorial decisions as to what constitutes matters of genuine public concern"); *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001) ("[I]t is well-settled that

29

allegations of sexual harassment . . . are matters of public concern."); *Todd v. Lovecruft*, No. 19-CV-01751, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020) ("[T]he public has an interest in identifying individuals who commit sexual abuse and accusations of abuse are matters of public concern."). Thus, the statements here involve a matter of public concern, and UPEPA's fee provision applies.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in JJP's opening Motion, JJP respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice and that JJP be awarded its attorneys' fees and costs.

RESPECTFULLY SUBMITTED this 17th day of April 2026.

/s/ David C. Reymann

**PARR BROWN GEE & LOVELESS, P.C.**
David C. Reymann
Sean Sigillito
Carissa Uresk

**CAMERON STRACHER, PLLC**
Cameron Stracher
Sara Tesoriero

Attorneys for Defendant Jeff Jenkins Productions LLC